·[No. 5954.]

## THE COLORADO TELEPHONE CO. V. WILMORE ET AL.

1. PUBLIC SERVICE CORPORATIONS—*Duty to Patrons*—The defendant, a telephone company, having for many years furnished plaintiffs with telephone service through its principal exchange in the city of Denver, where all those with whom he associated also resided and received like accommodation and service from defendant, it was held that defendant was not at liberty to disconnect them entirely from that exchange, and connect them with a new exchange in a neighboring village, where the plaintiff had no business connections, and the service through which would be less advantageous and convenient, and more expensive.

The fact that under the contract by which their relations were commenced either party was entitled to terminate it, upon a certain notice, did not affect the result.

Nor did the fact that plaintiff's residence and place of business was not within the city of Denver, but in another county.

But, *held*, that defendant could not be required to retain the connection of plaintiff with its central or main exchange; that it might lawfully connect them with any other of the exchanges of the city, affording equal facilities, upon the same terms and conditions, and at the same rates, if reasonable, as those exacted of other patrons.

2. EQUITY—*Jurisdiction*—A court of equity has no jurisdiction to prescribe the rates which a public telephone company shall exact from its patrons; nor to require it to serve a particular patron through a particular office or exchange.

3. PLEADINGS—*Construed*—Plaintiffs having brought their bill to compel a telephone company to continue to furnish them service through its central or main exchange, and at the same rate as theretofore, and to perpetuate the contract under which, for many years telephone service had been accorded to them, neither of which could properly be decreed, held that this did not bar them from obtaining such other and different equitable relief as the pleadings and proofs might show them to be entitled.

Gabbert, J., dissenting, was of the opinion that the bill should be dismissed.

*Error to Denver District Court.*—Hon. FRANK T. JOHNSON, Judge.

Mr. MILTON SMITH, Mr. CHARLES R. BROCK and Messrs. SCHUYLER & SCHUYLER, for plaintiff in error.

Messrs. TONEY & TONEY, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Defendant below, plaintiff in error, The Colorado Telephone Company, is a corporation engaged in the business indicated by its name, with its principal office in the city and county of Denver. Plaintiffs, defendants in error, reside in Jefferson county, with places of business and residences just over the line dividing that county from the city and county of Denver, but immediately tributary to the latter territory. On August 29th, 1901, a contract was made between the defendant and Wilmore, one of the plaintiffs, under the terms of which the defendant has ever since been, and still is, furnishing him telephone service from its Denver system to his place of business. Similar contracts were also made between the other plaintiffs and the defendant, at different times thereafter, prior to the institution of this suit, under which they also have had like telephone service, both for business and social purposes. Each of the contracts contains an express provision making it subject to termination, at the option of either party, upon thirty days' notice in writing. When these several contracts were entered into there were only a few people located in the neighborhood of plaintiffs. Since that time, however, the community in the vicinity of their residences and places of business has grown in population, so that the number of residents therein, who demand, require, and are entitled to telephone service, has increased correspondingly, and it became necessary for the company to establish an exchange at the town of Arvada, situate some three or four miles north and west of the several respective locations of plaintiffs, from which to serve the people of that town and vicinity. The main purpose of the exchange at Arvada was to give service to and between those living in and near that village. The town, however, is connected by trunk lines with the Denver system, just as, for example, are the towns of Golden, Boulder and other state towns. Subscribers to, and those receiving service from, the Arvada exchange, in order

to communicate with the users of telephones connected with the Denver system, must do so over toll lines, and are subjected to a toll charge therefor, like, for example, subscribers in the Golden or Boulder exchanges. The testimony establishes, and the court in substance found, that, geographically, the plaintiffs are in a territory immediately tributary to Denver, and are, and can be, more readily and naturally connected with the Denver telephone system than with the Arvada exchange.

After the new exchange had been established notice was given to each of the plaintiffs, agreeable to the provision contained in the several contracts between them and the defendant, that the particular contracts would be terminated at the expiration of thirty days, when, if the plaintiffs, or any of them, so desired, other contracts would be made by which telephone service would be furnished to them through the Arvada exchange, at the same rate, with like facilities, and of the same character and quality as that furnished to other users in that neighborhood connected with that exchange.

Upon receipt of this notice plaintiffs brought a common suit to enjoin the defendant from exercising its option under these respective contracts to terminate them, or any of them, and to compel it to furnish each of the plaintiffs with telephone service at the same rate, in the same manner, and through the same exchange, as had previously been done, and for general relief. The real object of the action, as is clearly apparent from the averments of the complaint considered as a whole, is to prevent threatened discrimination between users of telephonic service similarly situated. While plaintiffs were not entitled to the specific relief prayed and given, still there is sufficient alleged in the complaint, accepted as true, to afford, under the general prayer, relief from proposed discrimination by defendant between plaintiffs and others of its patrons, all entitled to like service on the same terms.

All purely technical objections urged will be disregarded, and matters affecting the merits of the controversy only will be considered and determined, that there may be an end to litigation.

The record shows that plaintiffs have for years been receiving telephone service from the defendant company, out of its main exchange in the city of Denver, under special contracts, which could by their terms be terminated by either party on thirty days' notice. The plaintiffs were, for all these years, recognized and furnished service, as being in the Denver telephone zone, and according to the proof are geographically well within the limits of the local business of the defendant, as carried on in and about the city of Denver. They are, therefore, because of their established and settled status in that zone, and geographically, entitled to continue to have, as in the past, telephone service upon the same terms and conditions, in all particulars, which others, like or similarly situated in that particular territory, have and receive it; no more, no less, so long as that service is fair, just and reasonable.

It may be admitted that the specific contracts, under which service has been furnished by the company and received by the plaintiffs, can be lawfully terminated, upon compliance with their conditions as to notice; but the question here is not one of termination of contract, but termination, or change of character and quality of service. The service to plaintiffs may not be terminated at will by the defendant, or the character or quality of it changed, so as to make such service essentially different from, inferior to, and more expensive than, that which is now being furnished to other users, like or similarly situated in the Denver zone, so long as they are ready to receive and pay for it, after the same manner and upon the same terms and conditions that others in that territory do. In other words, plaintiffs are entitled to have direct connections with the Denver system, through sone exchange in that recognized telephone zone, so that they may reach all users of the service out of the main and all other ex-

changes in the Denver system, just as other subscribers therein do.

It is clear that the claim of the plaintiffs to the right of direct connection with the main or central switch-board is untenable, and can neither be upheld nor enforced. But the attempt in this case is to put plaintiffs into the Arvada exchange, where a toll charge is made, both to them, when they call a person in Denver, and also to any one in Denver calling them. This is clearly an inferior service to that which has been, and yet is being, furnished plaintiffs, and admittedly would be greatly more expensive; and it is also inferior to, and more expensive than, that which is still furnished, to other users of like service in the Denver zone, to which latter territory plaintiffs belong, because of the past recognition of and established service to them by defendant, from its main exchange of the Denver system, and also because of their geographical position. In other words, they have for years been recognized, accepted and given service by the defendant, as belonging to that territory, and a status for them has been created in that respect; so that the company will not now be heard to say otherwise, or to discontinue service to them from some exchange of the Denver system, unless replaced by some other service equally advantageous. The defendant may put plaintiffs in any exchange in Denver which gives them like service, upon the same terms and conditions, with other patrons in the same telephone zone. It may also make the same charge therefor, so long as that is a just and reasonable one, which it makes to its other Denver patrons like circumstanced. It is within the discretion of the defendant to connect these plaintiffs with any Denver exchange, the Gallup, the Hickory, or any other exchange, which will give them like service to that given to its other Denver patrons, from the York, the Champa, the South or any other of the exchanges of the Denver system. That plaintiffs happen to be located just across the line which divides the territory of the city and county of Denver from Jefferson county is immaterial. Such lines are purely artifi-

cial, and the duties and obligations which the defendant owes to its patrons remain precisely the same whether such patrons live and have their places of business on the one side of such a line or the other.

The fundamental difficulty in the case arises from an attempt to erroneously classify plaintiffs as users of telephone service. The defendant seeks to treat them as being in the Arvada zone, or system, and entitled only to such service, upon the same terms and conditions, that its patrons receive who are properly located in that zone for that purpose; while in fact the pleadings and proof show that plaintiffs are in and belong to the Denver zone or system, and entitled to all the rights and privileges in that behalf which other users of the service in that territory have and enjoy.

The defendant has no more right to put the plaintiffs out of the Denver zone, and disconnect them from that system, and give them an inferior and more expensive service, than it has to do the like with a subscriber in the York, Champa, or any other Denver exchange. If what is here attempted may be done, then a subscriber in the York exchange, in the outskirts of that city, might be disconnected from his old exchange and connected with an exchange in Aurora, with an inferior and more expensive service, necessitating a toll charge when communicating with any one in the city of Denver. That clearly would be a discrimination between him and other Denver subscribers, and manifestly could not be lawfully done over his protest. This example serves to illustrate the discrimination which is sought to be made between plaintiffs and other subscribers in the Denver system, with whom, in the past, plaintiffs have been served on the same footing, enjoying with them precisely the same telephonic privileges and service under equal conditions. Just as a user of the service in the York exchange has a status, which entitles him to connection, through that exchange, with all other subscribers in the Denver system, and just as the company would be prohibited from discriminating against him, as between other

subscribers in that zone with a like status, either as to rates, kind and quality of service, or otherwise, so is the company prohibited from doing the like with plaintiffs, because their status with and relation to the company are identical with that of other Denver subscribers.   It is no concern to plaintiffs that they be connected with the Arvada exchange; that would be of no benefit or advantage to them.   They have no business interests there; their business and their patrons are in Denver, where they have always had direct communication, which privilege they now seek to retain in order to preserve their business and protect themselves against financial loss.   For practical purposes plaintiffs might just as well be connected with defendant's Golden or Boulder exchange, and the company has just as much legal right to make that connection, and compel plaintiffs to communicate with Denver through one of these sources, as it has to put them through the Arvada exchange, in the manner, and upon the terms and conditions, which admittedly it is its purpose to do.

The decree rendered is too broad in practically every particular, and must be reversed.   The court had no authority to fix rates; that is purely a legislative and not a judicial function; it had no authority to perpetuate the contract between the parties as it attempted to do; and it had no authority to compel the defendant to give service out of the central or main exchange, to the exclusion of all other exchanges in the Denver system.

However, plaintiffs, not perhaps in the most approved and faultless manner, appear to have stated a cause of action which, if supported by proofs, will entitle them to an order restraining the company from removing its telephone instruments from their places of business and residence; also from connecting them with the Arvada exchange, unless it gives a service therefrom at the same rate, on the same terms, in all respects, and of the same quality that it does to Denver patrons, from Denver exchanges, like, for illustration, that out of the York or Champa exchange; and also from disconnect-

ing them from its main exchange, until it is prepared, ready and willing to connect them with some other exchange, which will furnish the same class and quality of service, for the same pay, and on the same general terms, and conditions, under which other users of the service in the Denver system receive it. The mere fact that plaintiffs prayed for and got relief which the court could not properly give, ought not, on any theory, to put them out of court, when in their complaint facts are stated which may entitle them to equitable relief, although different in character from that actually decreed.

To hold that plaintiffs have now no action in equity, to prevent the consummation of a situation from which they would be clearly entitled to relief, when that situation is effected, would be to sacrifice substance to form, a thing which should not be encouraged.

In our view of the matter, the conclusions here announced adjust this controversy along lines so evidently in harmony with common fairness, reason and justice, that we deem it unnecessary to cite authorities to support them. Our attention has been called to none which are in any way in conflict with the conclusions here reached.

The judgment and decree is reversed, and the cause is remanded with directions to the trial court to permit plaintiffs to amend their complaint generally, if they shall be so advised, and for further proceedings in conformity with these views. Former opinion modified. Petition for elimination therefrom denied.

Decision *en banc*.

Mr. Justice Gabbert, by special opinion, concurs in the conclusion for a reversal of the judgment, but holds that the action should be remanded with directions to dismiss; also that the petition for elimination of certain portions of the original opinion should be allowed.

Chief Justice Campbell not participating.

GABBERT, J., concurring in part:

I fully concur in the reversal of the judgment, but in my opinion questions are discussed and, apparently, determined, which are not involved. Besides, the judgment of this court does not go far enough. In addition to reversing the judgment below, the cause should be remanded, with directions to dismiss. The sole purpose of the action instituted by plaintiffs was to obtain a decree compelling the telephone company to continue the service theretofore furnished these parties at the same rates, and from the same exchange, through which such services had been enjoyed, under special contracts. A decree to this effect was rendered. Very properly it is said in substance, in the opinion of Mr. Justice Bailey, that this is erroneous; that the claim of plaintiffs to this relief is not tenable; that the trial court had no authority to fix rates or perpetuate contracts between the parties, or to compel the telephone company to give them service out of its central, or main, exchange. This, in my opinion, is unquestionably correct, for the reason that the exchange through which service shall be furnished is a matter within the control of the telephone company. The courts have no authority to control or manage its affairs in this respect. Matters of detail must be left to the management of the company; hence, the action should be dismissed. The opinion, however, does not stop with determining the only questions presented by the pleadings, or the theory upon which the case was tried below by the respective parties, but proceeds to state that plaintiffs are within the Denver zone; that they are entitled to telephone service upon the same terms and conditions which others similarly situated in that territory receive; that plaintiffs are entitled to have direct connection with the Denver system through an exchange in that territory—a declaration totally at variance with the proposition that the details of service must be left to the control of the telephone company. In the opinion of Mr. Justice Bailey it is then said, that if the tele-

phone company connects plaintiffs with the so-called Arvada exchange, it must give them a service on the same terms in all respects and of the same quality that it does other Denver patrons from Denver exchanges.

In my judgment, none of these questions are presented for determination, and I, therefore, decline to express any opinion upon them at this time. The court having determined that the plaintiffs were not entitled to the relief demanded, and given, that the exchange through which the plaintiffs were given service was a matter within the control of the telephone company, (a conclusion in which I fully concur), the other questions discussed and intended to be decided should not be determined in an action, the real and sole purpose of which was nothing more or less than to compel the telephone company to continue in force and effect the several contracts theretofore entered into with the plaintiffs. They are not now presented for consideration, and the decision, to the extent pointed out, is not only premature, but in a case where, under the issues presented, they are not involved, and according to the views of Mr. Justice Bailey, will not be, except the complaint be amended.

### On Petition for Rehearing.

Since the foregoing was written the original opinion has been modified in a respect with which, under the pleadings, I do not agree. As above stated, questions were discussed and determined in the original opinion which were not involved. In this respect the modified opinion is open to the same objections. The sole purpose of the case was to perpetuate the contracts theretofore entered into between the company and plaintiffs. The fact that the latter prayed for general relief did not entitle them to any further or different relief than that to which the action they instituted entitled them. This, according to the complaint, was, whether or not they were entitled to have their contracts perpetuated. In the modified opinion, it is still said that plaintiffs, by the averments of their

complaint, are entitled to a service on the same terms, and of the same quality, enjoyed by others similarly situated. This, I submit, is entirely without the issues tendered by their complaint. The cause of action originally set up by plaintiffs was based exclusively on their contracts. If, upon the complaint as it now stands unamended, they are granted the relief which the court now says they may be, if supported by competent proof, then the cause of action upon which such relief would be granted is entirely different from that pleaded. A case entitling them to such relief can only be made by amending their complaint so as to permit a new cause of action which would require a consideration of questions of both law and fact, entirely different from the one originally pleaded. It is settled beyond controversy, that an amendment to a complaint will not be allowed when its effect is to substitute for the original cause of action a new and different one. The court having decided that the plaintiffs were not entitled to the relief given on the case as made by their complaint and evidence. and it appearing, in my judgment, that the other questions discussed and determined. can only be presented by an amendment which will state a new and different cause of action from that originally pleaded. the cause should be remanded with directions to dismiss.

Decided July 3, A. D. 1911.   Rehearing denied January 13, A. D. 1913.