[No. 8043.]

## WOLVERTON v. MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY.

1. PUBLIC SERVICE CORPORATIONS—*Rules—Regulations—Discriminations.* A public service corporation is under duty to render equal service to all, without discrimination as to rates or facilities. Even a contract to render service to a particular patron, at a particular rate of compensation, valid when made, will not justify a continuance of the service at the agreed rate, when, subsequently a higher rate is *prescribed* to and exacted from the public. (62, 63)

2. ——*Legislative Control.* The rates exacted by a public service corporation are subject to legislative regulation. (62)

The courts have no authority to prescribe rates for the service. (65)

3. TELEPHONE COMPANIES—*Duty to the Public.* Telephone companies are under duty to extend to all their patrons the same service, and at the same rates where the conditions are the same.

Every citizen of the community where such a company operates is entitled to have a telephone instrument installed in his premises, and to receive the same service, at the same rates as others, under similar conditions; and this right does not depend upon contract, but upon the fact that the company is a public service corporation, and owes the same service, at the same reasonable rate, to every member of the community. (63)

4. ——*House Service—Business Service.* There is a difference in the value of the telephone service rendered to premises occupied merely as a residence, and premises occupied for business, and a reasonable difference may be made in the rate charged. A contract to render telephone service to a residence will not entitle the citizen to the installation of an instrument in a new place of residence, where it is to be devoted to carrying on business. (62, 63)

5. SPECIFIC PERFORMANCE—*Revocable Contract.* Equity never interferes to enforce a contract where the party sought to be charged has reserved to himself, or the law confers upon him, the right of revocation. (64)

The contract of a public service corporation to render service to a particular patron at a particular rate for a specified time, is within the rule; because no public service corporation can lawfully enter into such a contract. (64, 65)

*Error to Boulder District Court.*—Hon. NEIL F. GRAHAM, Judge.

Mr. HOWARD L. HONAN and Mr. W. G. HOUSTON, for plaintiff in error.

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. W. H. FERGUSON, Mr. JOSEPH SAMPSON and Mr. ELMER L. BROCK, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The complaint in this case alleges that the plaintiff, a citizen of the city of Boulder, had a residence telephone installed in his dwelling by the Colorado Telephone Company, on the 9th day of March, 1904. That later the defendant, the Mountain States Telephone Company succeeded to the business and rights of the Colorado Telephone Company.

The telephone remained in the house, and so in use of the plaintiff, until the 14th day of February, 1912. On that day the plaintiff removed to another place of residence, and the defendant refused to install another telephone at the new place of residence under the terms of the original contract.

The telephone was installed originally under the usual application and contract. The price to be paid under this contract was one dollar and fifty cents per month, or four dollars and fifty cents per quarter, with additional pay for excess calls, and a fee of five dollars for installation. It was provided in the contract that:

"The Colorado Telephone Company may terminate the subscriber's rights by written notice served on the subscriber or any occupant of the premises and sever his connection and remove the instrument for non-payment of the rental provided for herein or for any use of the telephone by the subscriber contrary to this request, etc."

The complaint also alleged that the defendant presented a bill for the use of the telephone on the 1st day of February, 1912, for service for that full month which plaintiff then paid, and further, that the plaintiff has complied with all the conditions of the contract.

It was further alleged in the complaint:

"That the plaintiff is engaged in the life insurance business, and during a great portion of said time maintained an agency at his residence at 1728 Grove Street, in the said city of Boulder, where said telephone service

was rendered as aforesaid; and that at said residence Vera Wolverton, his wife, for the joint benefit of herself and this plaintiff, maintained a fire insurance agency, and that both this plaintiff and his wife, Vera Wolverton, have built up a large business in their respective agencies in the cities, town, and localities included within the territory covered by said contract as aforesaid. That this plaintiff, and the said Vera Wolverton, and also their customers have become accustomed to transact much of the business in regard to their insurance and other business, by means of the telephone, and that this plaintiff and the said Vera Wolverton have frequent occasion to call up customers, and to transact various other kinds of business in the several towns and adjacent communities covered by said contract, and people within said territory have frequent occasion to call up plaintiff and his wife on matters of business. That the character of the business being carried on by plaintiff and his wife is such that quick, prompt and reliable service and communication is essential, and that the discontinuance of said telephone service, and the disconnection and removal of said telephone, and the refusal to furnish service under the said contract, is working and will continue to work irreparable injury to this plaintiff, by causing dissatisfaction among said customers and inevitable loss of business.''

There are further allegations of repeated requests to install and maintain the telephone in accordance with the terms of said contract, and at the new place of residence.

It is also alleged that the defendant is a public utility corporation, and that there is no other service of like character being rendered to the citizens of Boulder, and none other available to the plaintiff and his wife in carrying on their business.

The prayer was for a temporary mandatory injunction to compel the defendant to install and maintain a

telephone instrument at the new place of residence, and render service to the plaintiff in accordance with the terms of said contract, for damages and costs.

A general demurrer was sustained to the complaint, and this is assigned as error.

It will be seen that the demand of the plaintiff is for the installation of a telephone for business purposes, and the damage claimed is for injury to plaintiffs business.

The contract with the Colorado Telephone Company was for residence purposes alone, and shows this to be an entirely different class, with different charges than for business purposes.

The complaint does not allege that the plaintiff has tendered or offered to pay, the usual and customary rate for such purpose, or the reasonable value of such service, or a reasonable rate for any service whatsoever.

Telephone companies are public service corporations and their instruments and apparatus are therefore devoted to a public use, and by reason of various valuable rights and franchises granted by the public are subject to certain well understood duties and obligations, without discrimination, to the public generally, and are bound to conduct their business in a manner conducive to the public benefit. They are likewise subject to legislative regulation and control. These companies may not arbitrarily refuse their facilities to any person desiring them, and offering to comply with their regulations, subject to the provision that rates and regulations must be reasonable.

That there is reasonably a difference in the value of such services, as between business and residence purposes, and that such difference in the rates charged by such public service companies, is common and usual, is well understood. So that in this case, even if we were

to hold the contract binding, for continued use as a residence phone, it cannot apply in case of use for business purposes, which appears to be the clear demand of the plaintiff.

The complaint does not allege public regulation as to rates, nor a customary rate charged for the service demanded, nor what is a reasonable rate therefor, nor a tender of any such sum. The right of the plaintiff, as a resident of the city of Boulder to have a telephone installed in his home or place of business, and to the use thereof, is not dependent upon contract, but upon the fact that the defendant is a public service corporation, with its attendant obligations to the public by reason thereof, and the plaintiffs willingness to pay the reasonable rates for such service, and to otherwise comply with the defendants reasonable regulations, applicable to all alike, and without discrimination.

But it must be conceded that the plaintiff could at any time have terminated the contract, under its own terms, at will. There is no agreement that the contract will continue for any definite period.

It requires no argument to show that such contracts with public service corporations, for fixed period are impracticable, if not impossible from their very nature. The service is a public service and subject to a constant change of conditions.

It is clear that if the telephone company should reduce its rates for service to the public generally, it could not continue to hold the plaintiff indefinitely, under a contract for a higher rate.

The rule as to the enforcement of contracts wanting in mutuality was stated by Judge Cooley in *Rust v. Conrod,* 47 Mich. 449, 11 N. W. 265, 41 Am. Rep. 720; to be:

"But the court will also refuse to interfere in any case where if it were to do so, one of the parties might nullify its action through the exercise of a discretion

which the contract or the law invests him with. The refusal in such a case does not depend of necessity upon any irregularity, inequality or unfairness, but is sufficiently based upon the impropriety of imposing upon the judge, the labor and upon the public, the expense, of an investigation of reports, when the circumstances are such as to preclude any judgment that may be rendered from being final. No court can with reason be called upon to do a vain thing. All contracts where the party has reserved to himself, or where the law gives him, the authority to render nugatory any decree that ought to be rendered in their enforcement rest upon the same principle. This was recognized in *Rutland Marble Company v. Ripley,* 10 Wall. 339, 359 [19 L. Ed. 555] and more distinctly asserted and decided in *Express Co. v. Railroad Co.,* 99 U. S. 191, 25 L. Ed. 319. In this last case the very strong assertion is made that a court of equity never interferes where the power of revocation exists."

As to the application of this rule in case of contracts with public utilities for service see *Fowler Utilities Co. v. Gray,* 168 Ind. 1, 79 N. E. 787, 7 L. R. A. (N. S.) 726, 120 Am. St. 344.

2, Wyman on Public Service Corporations well states the reason for the rule of non-enforcement of such contracts with public service corporations as follows:

"A troublesome problem arises when the continuing to render service at certain rates fixed by a contract which was legal when it was made, comes into conflict with new rates later scheduled, by which the public generally are called upon to pay higher rates. It once seems to have been thought that a continuing contract to take shipments must be respected when rates generally are raised. In those days it will be remembered any concessions for which anything could be said was held justifiable. But of late with the stringent law against all dis-

crimination, and the insistent enforcement of it, even a definite contract still continuing by its terms is held no justification for giving to the particular customer lower rates than those called for from all, by the present schedule. Once the policy against discrimination is well established there is no difficulty in saying that for reasons of public policy no further obligation attaches to such a contract. To the argument that the contract may have been valid when made, if it fixed the rate then charged all, and that therefore the subsequent action of the railroad in advancing rates generally could not invalidate it, the United States Supreme Court replied recently: 'This contention loses sight of the central and controlling purposes of the law, which is to require shippers to be treated alike, and that the filed and published rate, shall be equally known by and available to every shipper.' "

And it is now held that even in case of such contracts with public utilities for specific rates and for definite periods of time, these are subject to legislative acts of regulation. *Louisville & Nashville Ry. v. Mottley*, 219 U. S. 467, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; *Southern Wire Co. v. St. Louis &c. Co.*, 38 Mo. App. 111.

In addition to what has been said, it has been held that such a judgment as is prayed for in this case, would be in effect the fixing of a rate by the court. *Nebraska Tel. Co. v. State*, 55 Neb. 627, 76 N. W. 171, 45 L. R. A. 113.

It is universally held that the power to fix a rate or regulation in such case is exclusively a legislative function, and that the courts may determine the question of reasonableness alone.

It is quite clear in this case that the court is asked to perpetuate a contract between the parties as it relates to a rate once agreed on, for residence purposes, and also to make it apply to a business purpose, and which

may or may not be at this time reasonable. Courts have no such power. *Colorado Tel. Co. v. Wilmore,* 53 Colo. 591.

The judgment is affirmed.

MUSSER, C. J. and GARRIGUES, J., concur.