No. 9786.

Chicago, Burlington & Quincy Railroad Company *v.* Public Utilities Commission et al.

1. Police Power—*Unreasonable Order*, made by a Public Commission is void.

2. ——*Presumption.* Orders of a railway commission are presumptively reasonable and will not be overturned unless the contrary clearly appears.

3. ——*Order to Railway Company to Establish a New Station*, sustained.

That the railway was subject to federal control under the act of March 21, 1918, was held, in view of sec. 15 of the act, and a general order of the Director General of Railways, not to invalidate the order.

An order of a federal official limiting the expense of any improvement, *Held* not to refer to expenditures made under police regulations of the state.

*Writ of Review to the Public Utilities Commission.*

Mr. S. HARRISON WHITE, Mr. E. E. WHITTED, Mr. J. L. RICE, for petitioner.

Mr. FRANK MCLAUGHLIN, for respondents.

Mr. Justice Allen delivered the opinion of the court.

THIS cause is before us on a writ of review to determine the validity of an order of the Public Utilities Commission requiring the Chicago, Burlington & Quincy Railroad Company to erect and maintain a station, with an industrial track, at a point on its line of railroad in Weld County.

The Railroad Company complains of the order, contending that it is unreasonable and unjust. Orders of a commission which require the erection and maintenance of stations at specified places are regulations made under the police power. 12 C. J. 1268, 1269. The regulations are void if unjust and unreasonable.

Orders of a railroad commission are presumptively reasonable, and will not be overturned unless it clearly appears that they are unjust and unreasonable. 22 R. C. L. 784, sec. 39. Our duty is to examine the testimony in order to determine whether there is competent testimony to support the findings of the commission, and whether the commission's order is just and reasonable. *Chicago, R. I. & P. Ry. Co. v. Pub. Utilities Com.*, 64 Colo. 263, 171 Pac. 86.

The proposed new station is referred to in the briefs as "Omar." If established, it would be located 57 miles east of Denver, between the stations of Roggen and Wiggins. Roggen is 11 miles west of the proposed station,

and Wiggins lies five miles east.  Crest is a small station six miles east of Roggen.  A siding, known as Bronco, is located about two miles east of the proposed station.

The station at Crest and the siding of Bronco are 6.34 miles apart, and the location of the proposed new station lies between these two points.  It appears from the findings of the Commission that its principal reason for ordering the establishment of the new station is that farmers in the surrounding country "cannot go into or out of Crest or Bronco on account of sand," and "that the present facilities at Crest and Bronco are nearly inaccessible" on account of sand hills at those places.  The Commission in its findings stated that it "will consider the closing of the station at Crest permanently or making it a non-agency station, on application by" the railroad company.  The order reads, in part, as follows: "It is therefore ordered, That the defendant (the railroad company), on or before 90 days from the date of this order, erect a suitable station building, install an agent therein, maintain an agency station, and construct an industrial track not less than 1,000 feet long and stock yards facilities usual at such stations at a point on defendant's line near the center of Section 25, Town 2, Range 61, Weld County, Colorado, at Mile Post 484, with leave to remove the present industrial track at Bronco.  *  *  *"  From the foregoing order, it appears that the siding at Bronco may be abolished and the industrial track or switch at that point may be removed by the railroad company.

Upon a review of the record, we conclude that there is sufficient evidence to support the findings of the Commission; that the Commission's conclusions are in accordance with the evidence; and that the order is just and reasonable.  It is assumed, in connection with the expression of this opinion, that the Commission will, as stated in its findings, "consider the closing of the station at Crest," and that upon application by the railroad company it will close such station permanently or make it a non-agency station.

The only remaining question in this case is whether the Commission had jurisdiction to make the order complained of, in view of the fact, of which this court takes judicial notice, that at the time the order was made, namely September 24, 1919, the railroad was subject to the Federal Control Act, being the Act of Congress of March 21, 1918 (Section 10156, et seq. Barnes Federal Code, 1919).

As hereinbefore stated, the order of the Commission requiring the new station at Omar, was a police regulation. It is not disputed that the Federal Control Act did not affect the laws or the powers of the states respecting railroads, where not inconsistent with the provisions of the Federal Act. Section 15 of the Act reads as follows: "That nothing in this act shall be construed to amend, repeal, impair, or affect the existing laws or powers of the states in relation to taxation or the lawful police regulations of the several states, except wherein such laws, powers, or regulations may affect the transportation of troops, war materials, government supplies, or the issue of stocks and bonds." Consistent with this section, the President through the Director General of Railroads, promulgated General Order No. 58, dated February 20, 1919, which, in part, reads as follows: "Transportation systems under federal control continue subject to the lawful police regulation of the several states, which were and are applicable to privately operated transportation systems in such matters as spur tracks, railroad crossings, safety appliances, track connections, train service, establishment, maintenance and sanitation of station facilities, investigation of accidents, and all other matters of local service, safety and equipment. It will be the policy of the Director General to cause the orders of the state commissions in these matters to be carired out." The foregoing General Order and the above quoted section 15 of the Federal Control Act, taken by themselves, clearly sustain the Public Utilities Commission in assuming jurisdiction to make the order involved in this case. In the case of *Commercial Club of St. James v. Chicago, etc., Ry. Co.* (Minn.), 171 N. W. 312, it

appears that the State Railroad and Warehouse Commission of Minesota made an order directing the railroad company to erect a new railroad and passenger depot at St. James, Minn.   Referring to the Federal Control Act, the court in that case said:   "Under General Order No. 58 of the Director General of Railroads, dated February 20, 1919, it is plain that Act Cong. March 21, 1918, c. 25 (U. S. Comp. St. 1918, secs. 3115¾a to 3115¾p), has no bearing upon the present controversy."

The Railroad Company in the instant case, however, contends that the Commission was deprived of jurisdiction to make an order establishing a railroad station which would cost more than $1,000.   This contention is made in reliance upon a promulgation of the Director General of Railroads made at a time later than when General Order No. 58 was issued.   In other words, the reliance is placed upon an order known as Supplement No. 2 to General Order No. 12, which amends Supplement No. 1 to such order No. 12.   Supplement No. 1 was issued November 12, 1918, several months prior to the time that General Order No. 58 was made, and provided that "no work involving a charge to capital account in excess of $10,000 shall be contracted for or commenced unless it be authorized by the Director of the Division of Capital Expenditures," except in certain cases.   Supplement No. 2, on which the Railroad Company relies, does not purport to modify General Order No. 58, but merely substitutes the figure 1,000 for the number 10,000 which appeared in Supplement No. 1, so far as these two Supplements are material to the present discussion.   The pertinent part of Supplement No. 2 reads as follows:   "General Order No. 12 and Supplement Number 1 thereto are hereby amended to provide so that no work involving a charge to capital account in excess of $1,000 (instead of $10,000) shall be contracted for or commenced unless it be specifically authorized by, the Division of Capital Expenditures."   We find nothing in either Supplement No. 1 or Supplement No. 2 which purports, or is intended, to limit the police powers of the

states. These two orders do not refer to expenditures made in compliance with police regulations. They do not affect General Order No. 58, which plainly authorizes the order made in the instant case, according to the view we have previously expressed and according to the holding in *Commercial Club of St. James v. Chicago, etc., Ry. Co., supra.* We therefore agree with the conclusion reached by the Public Utilities Commission, with reference to the contention now under consideration. In its decision on a petition for rehearing in this case, the Commission stated: "The Commission is of the opinion that such Supplement (No. 2) does not constitute a limitation of its authority and is solely directed to the relations between operative officers and directing heads of the Railroad Administration; and that General Order No. 58 of the Director General was not modified thereby." For the reasons above indicated, we cannot sustain the contention that the Commission acted without jurisdiction.

The order and decision of the Commission is affirmed.

*Affirmed.*

Decision *en banc.*

Mr. Justice Bailey not participating.