## No. 13,030.

DENVER AND SALT LAKE RAILWAY COMPANY *v.* ST. CLAIR ET AL.

(28 P. [2d] 340)

Decided December 18, 1933. Rehearing denied January 8, 1934.

Messrs. Smith, Brock, Akolt & Campbell, for plaintiff in error.

Mr. Oliver W. Toll, for defendants in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

In a suit in which E. L. St. Clair and others were plaintiffs and the Denver and Salt Lake Railway Company was defendant, the district court rendered judgment on the pleadings in favor of the plaintiffs. The defendant seeks a reversal of that judgment.

So far as necessary to a decision, the pleadings disclose the following situation: On October 31, 1904, the owner of certain land in Gilpin county entered into a contract with the Denver, Northwestern and Pacific Railway Company, whereby the owner of the land agreed to convey to the company a part of her land, and the company agreed ''to maintain a station at said point, which station shall be known as 'Tolland.' '' In performance of her part of the contract the owner conveyed to the company sufficient land for a right of way, a station, and a wye to permit the loading of cars and the switching of trains. The company laid its tracks, built a station, established an agency there and appointed an agent. The defendant succeeded to the rights of that company, and the plaintiffs acquired from the owner a part of the land then owned by her. The plaintiffs acquired their interests in reliance upon the contract obligation assumed by the company. Ever since their establishment the station, the agency and an agent have been maintained, and they now are maintained, at Tolland. Recently the defendant applied to the Public Utilities Commission for leave to discontinue the maintenance of its agency at Tolland and to withdraw its station agent and remove them to West Portal, which is on the other side of a mountain

range. The plaintiffs thereupon brought this suit to restrain the defendant from attempting to discontinue such service and from further prosecuting its application to that end before the commission. The defendant intends to maintain its station at Tolland to pick up and discharge passengers, freight, mail and express, and has made no application to abandon or lessen such service.

It is contended by the defendant that the agreement to maintain a station did not include an agreement to maintain an agency and an agent. But for twenty-nine years the defendant has maintained an agency and an agent at Tolland, and that would seem to indicate that by the word "station" the parties meant a regular station with an agency and an agent. It was a practical construction of the contract by the parties.

Contracts like the one before us are made subject to the rights of the public; the contract involved in this suit, therefore, obligated the company and its successor, the defendant, "to maintain a station" at the place designated unless and until the public interest requires its abolition or removal. In *Atlanta and West Point R. R. Co. v. Camp,* 130 Ga. 1, 60 S. E. 177, the court thus stated the law that is applicable to the present case: " * * * when one contracts with a railroad company in reference to those matters where the public is involved, the contract is made subject to the rights of the public; and when the exigencies of the business of the company are such that the rights of the public come in conflict with the rights of the contracting party under his contract, it is to be presumed that it was the intention of the parties that the private rights under the contract should yield to the public right. In applying what has been said to the present case, it cannot be held that the contract between the railroad company and the plaintiff was void per se; for the company had a right to make a contract with the plaintiff to locate a station at a given point, so long as the location of the station did not inter-

fere with the proper discharge of the duties resting upon the company as a quasi public corporation. But the plaintiff was charged with notice of the character of the person he was contracting with, and of the duties which that person owed to the public; and also, in reference to the subject-matter of the contract, that it was connected intimately and directly with the discharge of the duties the defendant owed the public; and therefore it became a part of the contract between the parties that the maintenance of the station at the point was limited, not by the time specified in the contract, but to that time, and to that time only, when, consistently with the discharge of the public duties of the company, the station could be maintained in the manner provided for in the agreement."

When the public interest requires it, the station at Tolland may be abandoned, notwithstanding the contract. The United States Supreme Court said, in *Manigault v. Springs,* 199 U. S. 473, 480, 26 Sup. Ct. 127: "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected."

In *Ohio & Colorado Smelting & Refining Co. v. Public Utilities Commission,* 68 Colo. 137, 143, 187 Pac. 1082, we quoted the foregoing with approval. For the application of the above principles in Colorado see also *Denver & South Platte Ry. Co. v. City of Englewood,* 62 Colo. 229, 161 Pac. 151.

■ Counsel for the plaintiffs contends that, conceding that the contract requiring the maintenance of the station is subject to termination whenever the public interest requires it, the question whether the public interest does or does not require it must be determined,

not by the Public Utilities Commission, but by the court. In this we think he is in error. Prior to the creation of the commission such matters were determined by a court, but the Public Utilities Act vests in the commission powers sufficiently broad to include the power to determine such matters, its orders and decisions being subject to review by the district court. C. L. §2924, *et sec.; Clark v. Public Utilities Commission,* 78 Colo. 48, 239 Pac. 20; *Greeley Transportation Co. v. People,* 79 Colo. 307, 245 Pac. 720; *Public Utilities Commission v. Town of Erie,* 92 Colo. 151, 18 P. (2d) 906.

In *Denver & South Platte Ry. Co. v. City of Englewood, supra,* we held that by the Public Utilities Act the Legislature intended to delegate to the commission the administration, supervision and regulation of all service rendered to the public throughout the state.

*People, ex rel. v. Colorado Title & Trust Co.,* 65 Colo. 472, 178 Pac. 6, was a suit to foreclose a railroad mortgage, which, of course, provided for a sale in case of default. The district court not only decreed a foreclosure sale, but also entered an order directing the receiver to remove and sell the rails and tracks and to permanently abandon and discontinue service thereon. No order had been obtained from the Public Utilities Commission authorizing the discontinuance of service. The commission's general order No. 5 provides: "It is hereby ordered, by the Public Utilities Commission of the State of Colorado that no * * * steam railroad shall discontinue its service, or abandon its line of railroad, or any part thereof, or remove its tracks, or any part thereof, without first having filed with this Commission a written notice of its intention to discontinue, abandon or remove its service or tracks, or any part thereof, within the State of Colorado; said notice to be filed with the commission thirty days prior to the discontinuance of its service, or the abandonment or removal of its tracks, or any part thereof."

We held in that case that the state has inherent power to regulate and control public utilities within the state; that the Legislature may delegate such governmental authority and supervision to a commission; that the powers of such commission are administrative; that the Public Utilities Commission of Colorado is vested with exclusive jurisdiction to determine whether a railroad company may abandon service upon and dismantle a railroad lying wholly within the state; and that the "junking" order of the court was void. We reversed the judgment and directed the district court to vacate that portion of the order that directed the receiver to cease operations upon and to dismantle the road.

In *Colorado & Southern Ry. Co. v. State Railroad Commission,* 54 Colo. 64, 129 Pac. 506, we upheld an order of the railroad commission requiring the railway company to resume the operation of its line between Como and Breckenridge.

And see *Chicago, Burlington & Quincy R. R. Co. v. Public Utilities Commission,* 68 Colo. 475, 190 Pac. 539, where we sustained an order of the commission requiring the railroad company to establish a new station; and *Public Utilities Commission v. Town of Erie, supra,* where we sustained an order of the commission permitting a railroad company to discontinue a station agency.

The commission's general order No. 4 reads: "That before any railroad corporation shall move or abandon any depot or station building or abandon an agency at any station, or discontinue any regular passenger train, said railroad company shall file a statement of such contemplated changes with this Commission at least ten days before their effective date."

That rule was made within the lawful regulatory powers of the commission. The defendant, as we have said, has applied to the commission for leave to discontinue the maintenance of its agency at Tolland and to withdraw its station agent and remove them to another place.

The commission has jurisdiction to hear the application and to grant or deny it as the public interest requires. Those objecting to the removal should appear before the commission in the proper manner and resist such application.

The judgment is reversed.

Mr. Justice Bouck did not participate.