No. 21703.

MELVIN M. ZELINGER, D/B/A PUBLIC DISTRIBUTING CO.,
AND JEAN RICH FOR ALL OTHER PERSONS SIMILARLY SIT-
UATED *v.* PUBLIC SERVICE COMPANY OF COLORADO, A
COLORADO CORPORATION.

(435 P.2d 412)

Decided December 26, 1967.

Donaldson, Hoffman & Goldstein, A Professional Corporation, and Alan A. Armour, for plaintiffs in error.

LEE, BRYANS, KELLY & STANSFIELD, By: ALFRED J. HAMBURG and BRYANT O'DONNELL, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFFS in error, hereinafter referred to as plaintiffs, brought an action in the district court against the Public Service Company of Colorado challenging the legality of charges made by the company for supplying electricity and gas to the residents of the City and County of Denver. Plaintiffs asked that the company be required to make an accounting of payments by all their customers in Denver, and that the court order a refund of all sums paid which were in excess of the maximum rate initially set forth in the franchise which was granted the Public Service Company in the year 1947. The trial court entered judgment denying the relief sought by plaintiffs.

The substance of the argument made in this court by plaintiffs is as follows: That following the granting of the franchise in 1947 and until January 9, 1954, the Public Service Company made and collected charges for service as provided for in the franchise; that on June 16, 1953, upon a vote of the "people" (as distinguished from "tax-paying electors") of the City and County of Denver, a Charter Amendment was adopted purporting to grant all of Denver's power to regulate rates, facilities, charges and services of privately owned public utilities within the city, in the General Assembly of the State of Colorado or to such agency as it might thereafter designate; that on January 9, 1954, defendant Public Service Company, following a hearing before the Public Utilities Commission of Colorado increased the charges for natural gas service supplied in the City

and County of Denver to exceed those agreed upon in the franchise ordinance of 1947; that on November 2, 1954, the people of the State of Colorado amended the Colorado constitution by adopting Article XXV which purports to confer authority to regulate public utility rates in home rule cities on the Public Utilities Commission of the State of Colorado, but the constitutional amendment specifically excepts and preserves the power of home rule cities to grant franchises.

It is further contended as follows: That subsequent to the aforementioned amendment the defendant again increased the charges for natural gas service in the City and County of Denver on February 1, 1955; on July 1, 1957; on February 5, 1958; and on July 11, 1960. The Public Service Company also increased the charges above the franchise amounts for electric service in the City and County of Denver on February 1, 1955, and on July 11, 1960; and finally, that the charges for electric and natural gas service as presently demanded and collected by defendant in the City and County of Denver are all higher than the stipulation for such service as set forth by the franchise ordinance of 1947.

Upon the above factual premise the plaintiffs for their "Summary of the Argument" make the following statement:

"The franchise ordinance of 1947 is a valid binding contract between the Plaintiffs and the class they represent and the Defendant. The rates and charges for electric and natural gas services set forth therein are binding upon the parties for a period of twenty years from the date of the contract. The Charter Amendment of June 16, 1953 was wholly ineffective insofar as it purports to delegate the city's rate regulatory jurisdiction to the Public Utilities Commission of the State of Colorado. Article 25, Colorado Constitution, enacted November 2, 1954, vests rate regulatory power in the Public Utility Commission, however, it does not and cannot impair the obligation of the 1947 franchise con-

tract, and, in particular, does not retroactively validate the unilateral rate raise of January 9, 1954. The question of whether or not the service, facilities, and rates of the Defendant are a matter of statewide concern as opposed to being a matter of local concern is wholly immaterial in this case. The raising of utility rates in the City and County of Denver above the maximum rates set forth in the franchise contract of 1947 is clearly unlawful and invalid."

Each of the major points included within the foregoing summary is argued at length by plaintiffs.

On behalf of Public Service Company a brief in excess of 250 pages has been filed, in which our attention is directed to eighty decisions of courts of last resort in this and other states, in addition to pertinent constitutional and statutory provisions and comments of text writers. The argument of Public Service Company is presented under seven main captions (one of which contains six sub-titles).

In view of the conclusion which we have reached following a study of the full arguments of the parties, it will not be necessary for us to discuss in detail all of the questions which are raised by plaintiffs and answered by the Public Service Company.

On February 11, 1947, the taxpaying electors of the City and County of Denver approved an ordinance, the effect of which was to grant a franchise to Public Service Company authorizing it to supply electric and natural gas service to the inhabitants of the city. As of that date the charter of the City and County of Denver provided that:

"All power to regulate the charges for service by public utility corporations, is hereby reserved to the people, to be exercised by them in the manner herein provided for initiating an ordinance."

Initial rates which Public Service proposed to charge for electric and natural gas service were set forth in the franchise, which also provided with respect to such

rates that during the term thereof, "the Company shall charge rates for gas and electric service which shall at all times be fair and reasonable. Such rates shall be subject to regulation as provided by law."

On June 16, 1953, following the decision of this court in *Mountain States Telephone and Telegraph Company v. City and County of Denver,* 125 Colo. 167, 243 P.2d 397, the people of the City and County of Denver adopted a charter amendment which provided, *inter alia,* that the power to regulate public utilities within the City and County of Denver should thereafter reside in the General Assembly of the State of Colorado or such commission or authority as should be designated by it. On November 2, 1954, Article XXV of the Colorado constitution was adopted in which it was provided, *inter alia,* that the regulation of rates and charges for services rendered by public utilities in home rule cities should be "vested in such agency of the State of Colorado as the General Assembly shall by law designate." The agency thus designated is the Public Utilities Commission of the State of Colorado. All changes in rates to which the argument of plaintiffs is directed were authorized by the Public Utilities Commission in proceedings submitted to the commission for determination.

With reference to the one increase of rates which was put into effect between the date of the charter amendment of June 16, 1953, and the state constitutional amendment of November 2, 1954, (Article XXV) as above indicated, it is argued that:

"The Charter Amendment of June 16, 1953 was wholly ineffective insofar as it purports to delegate the city's rate regulatory jurisdiction to the Public Utilities Commission of the State of Colorado."

In view of the decision of this court in *Mountain States Telephone and Telegraph Company v. City and County of Denver, supra,* the clear intent of the people of the City and County of Denver in adopting the charter amendment was to recognize that jurisdiction

and power to regulate rates and services of the Public Service Company should be lodged in the Public Utilities Commission. It is significant that Section 3 of the amendment provided that, "Any provision of the charter of the City and County of Denver in conflict or inconsistent herewith is hereby repealed." Thus all municipal regulations of the Public Service Company rates were swept aside.

Whether the operations of the Public Service Company had theretofore been of "local and municipal concern" within the language of Article XX of the constitution and thus subject to regulation by the city; or whether, on the contrary, those operations were state-wide in nature, is of no importance from and after the date of the repeal of all municipal regulatory provisions. The field of regulation of Public Service Company as well as other public utilities was vacated by action of the people of Denver and thereupon the statutory law of the State of Colorado concerning the regulation of public utilities operating outside home rule cities became fully applicable. Article XX of the Colorado constitution does not preclude regulation by state agency of public utilities serving in areas of "local and municipal concern." The operation of state law is ineffective in local and municipal matters in home rule cities only to the extent that charters or ordinances governing such matters are adopted by such cities and remain in effect therein. Article XX, Section 6, of the state constitution specifically provides that:

"The statutes of the State of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters."

There is, therefore, no unlawful attempt on the part of the city to "delegate the city's rate regulatory jurisdiction to the Public Utilities Commission of the State of Colorado." The city had regulatory power only

as long as it saw fit to exercise it. It had a perfect right to withdraw from the field of the regulation of rates to be charged by public utilities. This it did by the charter amendment and thereupon the law of the state was automatically effective. The Public Utilities Commission had jurisdiction to regulate the rates of the Public Service Company from and after the date of the Charter Amendment without regard to the question of whether the company operations were of "local and municipal" or "state-wide" concern. Numerous decisions of this court place this conclusion on solid footing. *People ex rel. v. Newton,* 106 Colo. 61, 101 P.2d 21; *Horst v. Denver,* 101 Colo. 284, 73 P.2d 388; and other authorities mentioned in those cases.

There is an additional answer to the claim for refund of the rate increase for natural gas service which went into effect on January 9, 1954. All of the amounts collected thereunder by the Public Service Company were refunded to the natural gas consumers in Denver as a result of proceedings before the Federal Power Commission. In that action a raise in rates by a wholesaler of natural gas, from whom Public Service Company supplied its needs, was nullified. The increased wholesale cost of gas was the basis upon which the first rate increase for gas was authorized by the Public Utilities Commission. When the wholesale rate increase was nullified the increased retail price paid by the consumer was refunded.

The trial court found, *inter alia,* the following:

"On February 1, 1955 and on certain other dates subsequent to the charter amendment and the constitutional amendment, The Public Utilities Commission changed the rates to be charged for electric and natural gas service by Public Service Company. In certain instances rates were lowered, and in other instances the rates were increased. In each instance where rate alterations were made, public hearings were held and due notice was given to interested parties, including the City and

432

County of Denver and the inhabitants thereof. In each of said instances, Denver was represented by attorneys and other cities were in like manner represented by their attorneys.

"Plaintiffs introduced no evidence to show or to establish that the rates charged by Public Service were not, at any time, fair and reasonable as provided in the franchise, and plaintiffs' counsel in their argument to this Court, did not urge that such rates were not fair and reasonable."

██ We hold that the franchise ordinance of 1947 did not preclude a modification or change in the rates initially charged for electric and natural gas service as shown by the franchise itself. On the contrary, the document in its entirety contemplated that a change in rates might be made "as provided by law" in that, following full hearings the changes were authorized by the Public Utilities Commission. It is contended, however, that the "law" under which these changes were made impairs the obligation of a contract [the franchise] contrary to pertinent constitutional provisions.

██ It is sufficient to say in this connection that all contracts are entered into subject to a proper exercise of a reserved police power of the state. The general rule in this connection is stated in 73 C.J.S., at page 1085, as follows:

"Unless otherwise provided by constitution or statute, a general grant of power to regulate rates authorizes a public utility commission to regulate or modify rates fixed by contract, including those specified in franchise agreements, even though such contracts or agreements were executed prior to the passage of the statute by which the power is conferred, since they must be deemed to have been made subject to the police power of the state. * * *"

The above stated general rule has been consistently followed in this jurisdiction. *Denver and Salt Lake Railway Company, v. St. Clair,* 94 Colo. 67, 28 P.2d 340;

*City of Lamar v. Town of Wiley,* 80 Colo. 18, 248 P. 1009; *Ohio & Colorado Smelting & Refining Company v. Public Utilities Commission,* 68 Colo. 137, 187 P. 1082; *Wolverton v. Mountain States Telephone and Telegraph Company,* 58 Colo. 58, 142 P. 165.

The foregoing leads inescapably to the conclusion that the judgment of the trial court is correct and it is hereby accordingly affirmed.

MR. JUSTICE KELLEY not participating.