Senator Dan Schaefer President Pro Tem of the Senate State Capitol Building Denver, CO 80203
Dear Senator Schaefer:
This opinion letter is written in response to your request for an opinion concerning possible violations of S.B. 95.
QUESTION PRESENTED AND CONCLUSION
May a home rule city require industrial or commercial users of a private refuse service to pay user charges for the same type of waste services provided by the governmental body?
 My conclusion is "no." A home rule city may not require either that industrial or commercial users of a private refuse service to pay user charges for waste services provided by the governmental body or that the issuance of building permits be made contingent upon use of the city's refuse service.
ANALYSIS
This opinion request arises from allegations that certain home rule cities are requiring commercial or industrial customers of private refuse services to pay a user charge for the cities' trash-hauling services and that these cities are making the issuance of building permits contingent upon employment of the cities' refuse service. Apparently, home rule cities are contending that they have the right to charge user fees or require employment of the refuse service by virtue of their status as home rule cities.
With regard to purely local or municipal matters, home rule cities may exercise exclusive jurisdiction by passing ordinances which supercede any state statutes concerning the same matters. Colo. Const. art. XX, § 6. For an ordinance to supercede a state statute, the state statute and the local ordinance must be in conflict, and the ordinance must pertain to purely local matters. Vela v. People, 174 Colo. 465, 435 P.2d 412
(1967). Both state law and home rule ordinances regulating areas of local or municipal concern may coexist so long as the statutes and the ordinances do not conflict. Zelinger v. PublicService Company of Colorado, 164 Colo. 424, 435 P.2d 412
(1967); Vela v. People, supra.
Certain types of matters are of both a statewide and a local nature. Examples of such mixed matters are governmental immunity for tortious acts of municipal police officers (Delong v.City and County of Denver, 195 Colo. 27, 576 P.2d 537
(1978)) and policemen's and firemen's pensions (Conrad v.City of Thornton, 191 Colo. 444, 553 P.2d 822 (1976)).
There are certain matters which are of purely statewide concern. The supreme court has held that the licensing of electricians and the regulation of trash collection are matters of statewide concern, thereby preempting conflicting home rule enactments.Century Electric Service and Repair, Inc. v. Stone,193 Colo. 181, 564 P.2d 953 (1977); Givigliano v. Veltri,180 Colo. 10, 501 P.2d 1044 (1972).
The rationale of Century Electric andGivigliano are relevant to this opinion. InCentury Electric, Denver County denied Century Electric a permit to do work because it did not have a city license, even though it held a state license. Century Electric appealed the denial. The issue before the supreme court was whether licensing of electricians was a state or a local function. The court noted that the legislative determination that a matter is of statewide concern is entitled to great weight. In making its decision, the court considered the changing needs of the state and the impact of the enactment. Century Electric Service and Repair,Inc. v. Stone, 564 P.2d at 954. The court also held that in numerous areas comprehensive statewide regulatory schemes have been upheld in the face of claims that they infringed upon areas of local or municipal concern. Of particular relevance to this opinion is the finding by the court that ensuring free access to markets throughout the state is of statewide concern.
In Givigliano, the supreme court held that trash collection was a matter of statewide concern. The court based its conclusion on the legislative history as it existed at the time. At that time, trash collection and hauling was subject to the regulation of the Public Utilities Commission (PUC). The court determined that article XXV of the Colorado Constitution and the inclusion of trash-hauling within the purview of the PUC showed that trash-hauling was a matter of statewide concern.
S.B. 95, passed in 1980, removed trash-hauling, except for the transport of sludge or fly ash, from the definitions of public utility, C.R.S. 1973, 40-1-103(3) (Supp. 1981); C.R.S. 1973,40-10-101(4)(a); common carrier, C.R.S. 1973, 40-1-102(3) (Supp. 1981); motor vehicle carrier, C.R.S. 1973, 40-10-101(4)(a) (Supp. 1981); contract carrier by motor vehicle, C.R.S. 1973, 40-11-101(3) (Supp. 1981); property, 40-11-101(7) (Supp. 1981). S.B. 95 transferred the responsibility for the regulation of trash hauling to the counties, except where trash is collected by a city, county, city and county, town or other local subdivision. C.R.S. 1973, 30-15-401(1)(a) and (4) (Supp. 1981).
C.R.S. 1973, 30-15-401(1) (Supp. 1981) defines the subjects contained therein, including trash-hauling as "matters of purely local concern." The initial reading of this statute gives the impression that the home rule provision would allow home rule cities to charge user fees because of the legislative determination that trash-hauling is a local concern. However, C.R.S. 1973, 30-15-401(7) (Supp. 1981) carves out an exception to the "purely local" nature of trash-hauling. Paragraph (7) states:
 (7) Notwithstanding any other provision of law, nothing in this section shall prohibit the providing of waste services by a private person, provided such person is in compliance with applicable rules and regulations, within the limits of any city, county, city and county, town, or other local subdivision if such service is also provided by a governmental body within the limits of such governmental unit. Such governmental body may not compel industrial or commercial establishments or multifamily residences of eight or more units to use or pay user charges for waste services provided by the governmental body in preference to those services provided by a private person.
In effect, the legislature declared that notwithstanding the local nature of trash hauling, no local entity could restrict private refuse firms' access to its market. The legislature wanted to insure free access of trash-haulers to all markets within the state and to assure vigorous competition. Under the rationale of Century Electric Service and Repair, Inc. v.Stone, free access to markets is a legitimate statewide concern and is subject to state, rather than local, regulation, even though trash-hauling itself is a matter of local concern. Therefore, to the extent that any ordinance conflicts with C.R.S. 1973, 30-15-401(7) (Supp. 1981), it is void and unenforceable.
The same analysis applies to the requirement that the issuance of building permits is contingent upon the employment of the city's refuse service. Pursuant to C.R.S. 1973, 30-15-401(5) (Supp. 1981), the city:
 shall not grant an exclusive territory or regulate rates for the collection and transportation of ashes, trash, waste products or any other discarded material.
Subsection 5 explicitly mandates free access to markets. As noted above, free access is a matter of state concern. To the extent that a home rule city ordinance or regulation conflicts with30-15-401(5), it is void and unenforceable.
SUMMARY
A home rule city may not enforce an ordinance or regulation which requires industrial or commercial users of a private refuse service to pay user charges for waste services provided by the governmental body or makes issuance of a building permit contingent upon employment of city refuse service because that ordinance or regulation conflicts with C.R.S. 1973, 30-15-401(5) and (7) (Supp. 1981).
Very truly yours,
 J.D. MacFARLANE Attorney General
MUNICIPAL CORPORATIONS
C.R.S. 1973, 30-15-401
AFFAIRS, LOCAL, DEPT. OF LEGISLATIVE BRANCH Senate
A home rule city may not enforce an ordinance which requires industrial or commercial users of a private refuse service to pay user charges for waste services provided by the governmental body or make issuance of a building permit contingent upon employment of the city refuse services.