## No. 11,403.

### CITY OF LAMAR *v.* TOWN OF WILEY.

Decided July 6, 1926. Rehearing denied September 13, 1926.

Action to enjoin collection of claimed excess charges for electric current. Judgment for plaintiff.

#### *Reversed.*

1. SPECIAL COMMISSION—*Public Utilities Commission.* The public utilities commission is a ''special commission'' as that term is used in section 35, article 5, of the Constitution.

2. MUNICIPAL CORPORATIONS—*Public Utilities.* Where a municipality as the owner of a public utility furnishes electricity to its citizens within the municipal limits, the city itself, through its proper officers, possesses the sole power of fixing the rates to be charged for such utility.

3. *Public Utilities.* When a municipality furnishes public service to its own citizens, and in connection therewith supplies its product to consumers outside of its territorial boundaries, it is, as to such outside consumers, attended with the same conditions and subject to the same control and supervision that apply to a private public utility owner who furnishes like service.

4. *Public Utilities—Rates—Utilities Commission—Contracts.* The public utilities commission has power to permanently fix rates to be charged by a private owner for furnishing a public utility, regardless of any contract entered into between the parties as to such rates. The statute which confers power to fix rates upon the commission, is to be read into such contracts.

5. APPEAL AND ERROR—*Judgment.* Appellate courts will decline to make findings on issues of fact, that being a matter for determination by the trial court.

*Error to the District Court of Prowers County, Hon. A. C. McChesney, Judge.*

Mr. Herschel Horn, Messrs. Todd & Underwood, for plaintiff in error.

Messrs. Gordon & Gordon, for defendant in error.

*En banc.*

Mr. Justice Campbell delivered the opinion of the court.

The city of Lamar granted to a Colorado private corporation a franchise to build and operate in the city an electric light and power plant. The utility corporation furnished such commodities to the city and its inhabitants and in connection therewith served the surrounding territory and made a 20-year contract with the town of Wiley, 10 miles distant, to furnish the town with lights, and electric power for pumping water from the town's well for its municipal water works system, supplying the current from the Lamar plant. The contract provided that for the pumping service the town was to pay 6 cents per 1,000 gallons of water pumped into the town's standpipe. After the city of Lamar acquired this plant, proceeding on the theory that the State Public Utilities Commission has jurisdiction under our public utilities statute to fix the rates and charges for all individuals, and private and municipal corporations engaged in serving the public with light and power, under authority of section 2927 of the act, C. L. 1921, it filed with the commission a schedule of rates of charges for electric current to be supplied from this purchased plant to consumers both within and without the city of Lamar, including therein a schedule for the town of Wiley of commercial pumping power rates. This power rate only is involved in this action. The validity of rates, if any were fixed in the schedule, for consumers

who are citizens and inhabitants of the city of Lamar is not an issue in this case. This commercial power rate was in excess of the rate fixed by the contract between the town of Wiley and the utility corporation. It is admitted that the schedule power rate for Wiley, thus fixed by the city of Lamar and lodged with the Utilities Commission, is not discriminatory, unjust or unconscionable. After the town of Wiley had made several monthly payments to the city of these increased rates, it ceased further payments and brought this action in equity to enjoin the city from continuing to charge and collect from the town for pumping services in greater sums or rates than those fixed in the contract, and to recover the excess charges which it paid under protest. The parties have stipulated that if the city of Lamar, in filing with the commission a schedule of charges, followed the procedure prescribed by the utilities act, and the schedule rates have not been suspended or changed by the commission, as they have not, the same thereby became after 30 days the proper and lawful rates and charges for such service, provided the commission has jurisdiction to fix rates for service furnished to Wiley—a separate municipality outside the city limits—by the city, a municipal corporation, owner and operator of the public utility through purchase under a contract by which it assumed the burdens of the vendor utility corporation's contract with the town. The answer of the defendant city in substance contains allegations embodying the defense to the suit as above outlined. Plaintiff demurred to this answer as not being a good defense, but the court overruled the demurrer and the plaintiff filed a replication putting in issue the allegations of the answer. The case was continued from time to time and from term to term for about two years. Before the trial was had, and in the meantime, the parties had stipulated as above stated. In view of this stipulation and admissions of the parties in their briefs, and also because it accords with out own view of the

essential facts as disclosed in the record, we shall proceed on the assumption that full compliance by the city was made with the utilities act in the filing of the schedule, and shall also assume that all other material questions of fact in issue are, or should have been, found for the defendant city. This leaves, therefore, as the sole question for decision whether the Public Utilities Commission has jurisdiction to fix commercial rates for the town of Wiley, it being a customer not within the limits of the city, and to lower or raise the charges fixed by the contract between Wiley and the private utility corporation, whose rights and powers have passed to, and whose obligations thereunder have been assumed by, the city. This action was brought and issues were framed and the facts stipulated before the opinion in *Holyoke v. Smith,* 75 Colo. 286, 226 Pac. 158, was handed down. The inconsistent rulings of the trial court are to be explained by the circumstance that its first ruling, holding the defense of the answer to be good, was made before, while the final judgment, on the same state of facts, was rendered after, the announcement in the Holyoke case, the final ruling evidently being made to conform to the court's interpretation of the Holyoke decision.

We think the trial court extended to a state of facts in the present case an inapplicable doctrine, and the rule laid down in the Holyoke case, under a state of facts which are radically different, does not govern this case. It was there held that our State Public Utilities Commission has not the power to prescribe rates for the town of Holyoke because section 35 of article 5 of our Constitution prohibits the General Assembly from delegating such power to a special commission such as our Utilities Commission is. It was further held that a lighting system is owned and operated by a municipality in a proprietary, and not in a governmental capacity, and as such is not subject to legislative control. The Holyoke opinion itself differentiates the two cases. It

says that on the principle which underlies the opinion, it is unnecessary to give to a commission authority to regulate the rates of municipally owned utilities, since the parties affected by the rates are the municipality and its citizens, and the latter, whose chosen officers fix the rates, if dissatisfied with the charges they prescribe, may easily effect a change either at a regular election or by a recall; but the court proceeds to say, "where the people are dealing with a privately owned public utility, the situation is quite different, and there is good reason for a commission which shall act in the interest of the public, to avoid the possibility of oppression." This quotation, though in words confined to a case of a privately owned, is just as applicable to a municipally owned, public utility which furnishes its surplus product, not to its own citizens, but to those who are not citizens, but who live outside the municipality and have no voice or control in voting for the officers of the municipality who fix rates. The decision in the Holyoke case is necessarily restricted to the case of a municipality which is furnishing a public utility to its own citizens or inhabitants, consumers, all of whom live within the territorial boundaries of the municipality, and in whom is vested the ultimate authority to fix rates for themselves. A consumer who is served by a municipality, and who does not live therein, comes within the purview of the suggested rule in the Holyoke case that such consumers should be protected by a state commission in such circumstances.

In the present case the power rate fixed by the city of Lamar, owner of the public utility, for the town of Wiley, is not a rate fixed for citizens or inhabitants of the city but for another municipality, a consumer outside the city which has no voice in selecting those who fix rates for public service. The same fundamental reason that operated to control the decision in the Holyoke case, under the facts of that case, makes inapplicable the rule there applied to the state of facts here, which in-

voke a different rule. We, therefore, hold that where a municipality, as owner of a public utility, furnishes the commodity in question to its own citizens and inhabitants, consumers within the municipal limits, the city itself, through its proper officers, possesses the sole power to fix rates. When a municipality, whether in its operation of its own public utility it acts in its municipal or governmental, or in its proprietary, or quasi public, capacity, or partly in one and partly in the other, and as such furnishes public service to its own citizens and in connection therewith supplies its products to consumers outside of its own territorial boundaries, the function it thereby performs, whatever its nature may be, in supplying outside consumers with a public utility, is and should be attended with the same conditions and be subject to the same control and supervision that apply to a private public utility owner who furnishes like service. *Hillsboro v. Public Service Commission,* 97 Oregon 320, 187 Pac. 617, 192 Pac. 390, is much like the present case in some of its facts. Among other things it is said in that case, quoting from Dillon on Municipal Corporations, no uniform rule can be applied to all the circumstances in which a municipality acts under power to furnish a public utility like water, light or power, or to contract therefor, and it often happens that the municipality may and does act partly in one and partly in the other capacity and so may be governed by the legal principles applicable to both. *City of South Pasadena v. Pasadena Land & Water Co.,* 152 Cal. 579, 93 Pac. 490, is relied upon by both parties. It is partly favorable to each, but upon the ultimate question here, does not control, as its essential facts are different from the facts in this record. On the main proposition involved we think that when the city of Lamar goes beyond its own boundaries, and furnishes its surplus utility product to the town of Wiley, an outside consumer, the city itself does not have the power to fix the rates for such service. That power resides in the State Public Utilities Commission. Both

upon authority and reason a municipally owned public utility, as to service furnished consumers beyond its territorial jurisdiction, should be as already stated, subject to the same regulation to which a privately owned public utility must conform in similar circumstances.

The only remaining question is whether the contract between the town of Wiley and the vendor of the city of Lamar is controlling, and whether it prohibits the change of rates by the Utilities Commission. The city's vendor, a private corporation, under a valid contract, was furnishing public service to the town of Wiley. In furnishing this public utility to a municipality, as well as to individuals and private corporations, the rates unquestionably may be permanently fixed only by the Public Utilities Commission. This has been decided in *Denver & South Platte Railway Co. v. City of Englewood*, 62 Colo. 229, 161 Pac. 151, 4 A. L. R. 956, and in *Ohio & Colo. Smelting and Refining Co. v. Public Utilities Commission*, 68 Colo. 137, 187 Pac. 1082. It was there held that constitutional provisions against laws impairing the obligations of contracts do not prevent the state from the proper exercise of the power vested in it for the promotion of the common weal and the general public good. These cases are authority for the proposition that the public utilities statute, which confers the power of fixing rates in such cases upon the commission, is to be read into the contract between the town of Wiley and the public utility corporation. In other words, the contract itself was that though the rate fixed by the parties might be observed by them, so long as both are satisfied; it might also be changed at any time by the commission, upon the application of either, by lowering or raising the rates which the parties themselves agreed upon. Unquestionably the commission might lower or raise the contract pumping power rate while the utility was owned by the private utility corporation, even though such rate had been agreed upon between it and Wiley. Our own cases, supra, distinctly hold that the

utilities act applies to contracts entered into by a public
utility corporation with a municipality as well as with
individuals and private corporations. The sale of a
utility to a municipality as here adds nothing to and
subtracts nothing from the contract. The relative rights
and obligations of the original parties thereto, after the
sale and assignment, passed to and remained with, the
new parties just as it applied to the original parties.
The contract, therefore, does not prevent the Utilities
Commission from changing the rate. It follows that the
judgment below in plaintiff's favor is wrong and it is,
therefore, reversed and the cause remanded with in-
structions to the district court to vacate it and to pro-
ceed to determine the amount due the defendant city of
Lamar, in accordance with the law of the case as an-
nounced herein, and to enter judgment therefor in favor
of the city with costs.

### On Rehearing.

MR. JUSTICE CAMPBELL.

Each of the parties has filed a petition for rehearing
and each one is denied. In the petition of the plaintiff
in error, defendant below, city of Lamar, our attention
is called to an error in the remanding order which di-
rected the district court to dismiss the action at the cost
of the plaintiff, the town of Wiley. This order is wrong.
Under the stipulation of the parties the city is entitled
to a judgment against the town of Wiley in some sum, if
our decision is in favor of the city, which it is.

The opinion will, therefore, be, and it is, modified by
changing the remanding order so that it will be to the
effect that the district court shall vacate its judgment
and proceed to determine the amount due the defend-
ant city of Lamar in accordance with the law of the
case as determined by us, and to enter judgment in the
city's favor for the amount so found to be due, with
costs.

The further request of the city that this court shall

fix the date on which the increased rates became effective is denied. That is a matter for the district court in the first instance to determine from the stipulation of the parties and the additional evidence, if any, produced at the hearing. We decline to pass upon it now as the record is uncertain in that there is an apparent conflict or ambiguity in the stipulation as to the time when such rates become effective. In one part thereof it seems that they became effective September 1, 1920. This is apparently qualified by another recital that the plaintiff's claim is they did not become effective before December 1, 1920.