## No. 17,899.

JAMES B. PARRISH, ET AL. *v.* PUBLIC UTILITIES COMMISSION, ET AL.
(301 P. [2d] 343)

Decided September 4, 1956.   Rehearing denied October 1, 1956.

Mr. ALDO G. NOTARIANNI, for plaintiffs in error.

Messrs. MANCINI & SINGER, for defendant in error W. F. Cobb.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. HENRY E. ZARLENGO, Assistant, for defendants in error Public Utilities Commission, Joseph W. Hawley, Ralph C. Horton and John P. Thompson.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

THE individual plaintiffs in error are property owners living within a defined area in Adams county, adjacent to the City and County of Denver; are users of Denver city water for domestic purposes; and pay Denver directly for the water used by them. Denver's water mains terminate at the city limits. By virtue of a so-called "distributor's contract" made and entered into on October 24, 1952, between the City and County of Denver, acting by its Board of Water Commissioners, and W. F. Cobb, doing business as Cobb Plumbing and Utility Company, one of the defendants in error, the city water was distributed to the users through a private system installed and owned by Cobb sometime prior thereto.

A group of property owners on the outskirts of Denver, desiring Denver water for domestic use contacted the water board officials who agreed to sell them some of the Denver water on a metered basis so long and so much as the water board, in its discretion, determined, provided the users made all arrangements for trans-

porting the water from the city limits to their property. There were other details, conditions and restrictions. This was in the nature of a joint adventure, and Cobb, operating a plumbing business, finally became the motivating force after the joint adventure did not materialize. Cobb laid the pipes in the streets and the property owners got the water. There was no arrangement between Cobb and the users as to who was to pay for the upkeep of the pipes. This question was precipitated by Cobb serving notice of an annual assessment on each user in the amount of twelve dollars. Whereupon, on November 26, 1953, plaintiffs in error here, filed a complaint with the Colorado Public Utilities Commission seeking an order of the Commission requiring Cobb to show cause why he should not apply to the Commission for a certificate of public convenience and necessity and be subjected to the supervision and regulations of the utilities commission. Cobb answered the complaint, denying that he was a public utility and alleging that the commission had no jurisdiction. After an extended hearing, it was found that Cobb's operation more closely resembled that of a contract carrier, which was controlled by a contract between Denver and the users, and that it was the conclusion of the commission that he was an agent or representative of the water department of the City and County of Denver. It was further found that Cobb, being an agent of the City and County of Denver, enjoyed the same immunity from the jurisdiction of the Public Utilities Commission as that enjoyed by the City and County of Denver, and relied upon the decision of this court in the case of *Englewood v. Denver*, 123 Colo. 290, 229 P. (2d) 667, and determined that it had no jurisdiction of the matter and entered an order dismissing the complaint.

July 29, 1955, plaintiffs in error, property owners, made application to the district court of the county of Adams for a writ of certiorari directed to defendants Cobb, Utilities Commission and its individual members,

which writ was issued and a date set for return. By various stipulations the matter was continued from time to time until the 14th day of November, 1955.

On hearing, the trial court affirmed the decision of the commission. The summary of argument is divided into two phases, namely, one that Cobb is not a public utility under the Colorado statutes and second, that the decision of the commission is supported by substantial evidence and is conclusive on the courts. The burden to establish that Cobb and his operations was a "public utility" was upon plaintiffs. Our examination of the testimony discloses that no witness, either as an interested party or otherwise, testified to any understanding or agreement between themselves and Cobb as to the nature of transportation of the water service that Cobb was to render, and no details as to the length of time the service would continue or the charge, if any, to be paid therefor. There is absolutely no evidence to the effect that Cobb at any time held himself out to serve the public indiscriminately on any determinable basis. It was made clear that Cobb had no contracts with any water user; his only contract was with the City and County of Denver, and that he was so bound by such a contract that he could do nothing without Denver's permission. We have hereinbefore briefly indicated the finding of the Utilities Commission and if Cobb was a carrier under contract with Denver, then it is abundantly clear that he was a contract carrier and not a common carrier, and, as such, was an agent of the water department of the City and County of Denver. This being true, he is immune from the jurisdiction or control of the Public Utilities Commission as was so clearly determined by this court in *Englewood v. Denver, supra.* We find no contention herein that plaintiffs or the public can have the use of Cobb's pipe-line facilities as a matter of right, and that they, as well as the public, are in no position to demand the service. The service to each customer is a permissive service, which creates the dis-

tinction between a public utility or a private carrier. The record discloses no suggestion of a dedication of the pipe line by Cobb to the public service, and, as was determined in *Englewood v. Denver, supra,* this can never be presumed, but must be supported by evidence of an unequivocal intention to make such dedication. It was sought in the Englewood case to make Denver a public utility because it was the owner and seller of water to Englewood users. In the instant case, it is an effort to make Cobb, the transporter of Denver water under a contract with Denver, a "public utility."

Under our statute defining public utilities, Cobb's pipe-line operations must be impressed with the public interest. That it is not so impressed is readily determined by the fact that plaintiffs here, and the public, have no right to demand the service. They only had permission to make connections with his pipe line, and it cannot be said that they have a right to demand such sevice by operation of law, because there is nothing definite or specific about their right. It is reiteration of the principles laid down in the Englewood case, supra, to say that before Cobb and his operations could be classified as a public utility, he must hold himself out as serving, or ready to serve, all members of the public who may require it. We have no testimony to the effect that Cobb ever made any semblance of an offer to serve the public. The fact that he testified that he never refused a tap to anyone does not change his status.

In C.R.S. '53, 115-6-15, we find the following: "The findings and conclusions of the commission on disputed questions of fact shall be final and shall not be subject to review, * * *." The extent of our consideration of the matters here presented is limited to an examination of the testimony and the record and from that determine whether there is competent testimony to support the findings of the commission and to determine whether the commission's order is just and reasonable and whether it acted in excess of its powers. We are not at

liberty to substitute our judgment for that of the administrative body even if we were so inclined. It is our opinion from an examination of the entire record that the commission acted well within its authority in dismissing the petition and the judgment of the district court in sustaining the commission is right and should be, and, is affirmed.