## No. 27465

**City of Northglenn, a municipal corporation v. City of Thornton, a municipal corporation; Northwest Utilities Company, a Colorado corporation; Western Hills Utility Company, a Colorado corporation; General Waterworks Corporation, a Delaware corporation; Tolwin Corporation, a Colorado corporation; Transwestern Investment Company, a Colorado corporation; Perl-Mack Homes, Inc., a Colorado corporation; Jordan Perlmutter; Samuel Primack; William J. Morrison; and Board of County Commissioners of the County of Adams, State of Colorado, a body politic and corporate**

(569 P.2d 319)

Decided September 6, 1977.                    Rehearing denied October 3, 1977.

538

Carroll & Bradley, John S. Carroll, Louis A. Weltzer, for plaintiff-appellant.

Orrel A. Daniel, City Attorney; Davis, Graham & Stubbs, David M. Ebel, Alan M. Loeb, for defendants-appellees.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The City of Northglenn brought this action to obtain title to water and sewer facilities that are serving its residents and which are now operated by the City of Thornton. The facilities include all of the water and sewer lines located within Northglenn plus portions of Thornton's transmission and treatment facilities. The district court denied Northglenn's claim and we affirm.

In 1956, Northwest Utilities, a private corporation operating as a regulated public utility, began providing sewer and water services to that portion of Adams County which is now incorporated as the City of Northglenn. Its expansion into this area was accomplished by means of "Utility Extension Policy Contracts." Under the terms of these contracts, the developers who were building in the area agreed to construct all sewer and water lines, and, upon completion, to tranfer title to them by deed to Northwest Utilities. In consideration, Northwest Utilities agreed to make reimbursement payments to the developer for a period of usually fifteen years. These contracts were all entered into before construction began and before the filing of plats by the developers.

In 1963, the City of Thornton exercised an option contained in a 1957 franchise agreement with Northwest Utilities and purchased the entire system which served its residents and those in Adams County. The purchase was authorized by a vote of Thornton's citizens and was financed by an issue of both revenue and general obligation bonds. This court

ultimately approved that transfer. *City of Thornton v. Public Utilities Commission*, 157 Colo. 188, 402 P.2d 194 (1965). Since the purchase, Thornton has had exclusive control of the operation and maintenance of the system.

Although Northglenn was incorporated in 1969, it did not assert any claim of title to the utility system until 1971 when this action was initiated. Northglenn now claims ownership based on two broad theories. It contends either (1) that the system was dedicated to the public by placement of the utilities under dedicated streets or (2) that it is held by Northglenn in a constructive trust for the benefit of its residents whom, they contend, purchased the system as a part of the purchase of their homes from the developers.

## I.

A statement of basic principles is necessary in order to put into proper perspective Northglenn's claim that the utility system in issue was dedicated to public use free of all claims of ownership by Thornton. First, in Colorado, a dedication of property to the public use is never presumed without evidence of unequivocal intent to make such dedication. *Parrish v. Public Utilities Commission*, 134 Colo. 192, 301 P.2d 343 (1956). Second, for a common law dedication to be found there must be certain elements present including an intent on the part of the owner to dedicate and an acceptance of the dedication by the governmental authority.[1] *See Litvak v. Sunderland*, 143 Colo. 347, 353 P.2d 381 (1960); *Hand v. Rhodes*, 125 Colo. 508, 245 P.2d 292 (1952). Finally, these elements must be found from the unambiguous actions of the parties. *See Chicago, Rock Island & Pacific Railway Company v. Hayes*, 49 Colo. 333, 113 P. 315 (1911).

The stipulated facts in this case demonstrate that the sewer and water facilities were never themselves dedicated and that none of the necessary elements is present. Until the filing of this suit all parties acted as if the utilities were privately held. The developers contracted to transfer ownership and easements to Northwest Utilities before the system was even constructed, and in the sale from Northwest Utilities to Thornton, both parties believed that the system was free and clear of any claims or encumbrances other than the rebates owed to the developers. Further, there was undisputed testimony that neither the developers, Northwest Utilities, nor Thornton at any time had any intention of dedicating to the

---

[1]Northglenn also argues that there has been a statutory dedication made pursuant to sections 30-28-110(3)(a), 31-1-108, 31-1-401 or 43-2-201(1)(a) and (b). In most cases, however, the sewer and water facilities had not been constructed at the time of the plat filings which Northglenn uses in support of its claim of statutory dedication, and the basic issue of whether placement of those facilities under public streets acts to vest title in Northglenn arises independently of whether those streets were dedicated by statute or common law.

public any of the facilities now claimed by Northglenn, and there was additional undisputed testimony that Adams County would not have accepted and did not intend to accept any such dedication. Additionally, the parties stipulated that

"Northglenn and its residents assumed and treated Thornton as the full owner of the water and sewer system now being claimed by Northglenn until shortly before this suit was filed in September, 1971. The Northglenn residents have continued to treat Thornton as the owner of this system."

Thus, there was sufficient evidence to support the trial court's conclusion that there was, in fact, no dedication of the water and sewer facilities at issue here.

Both sides have agreed that the developer's dedication of public streets was properly made and accepted, and Northglenn argues that such dedication acted as a dedication of the sewer and water lines which were, in most cases, *subsequently* installed beneath those streets. Whatever interest a dedication of streets may pass to a municipality, *see City of Leadville v. Bohn Mining Co.*, 37 Colo. 248, 86 P. 1038 (1906) (title to ore beneath dedicated streets not passed but city may use area under streets for installation of municipal facilities), in Colorado the fact of placement of utility lines under public streets does not alone work a dedication of those lines. *Cf. City of Englewood v. City and County of Denver*, 123 Colo. 290, 229 P.2d 667 (1951). Both the Colorado Constitution, Article XVI, section 7 and Article XX, section 1, and statutes Section 38-5-101, C.R.S. 1973, provide for rights-of-way for the laying of such lines. Thus, in *Town of Lyons v. City of Longmont*, 54 Colo. 112, 129 P. 198 (1912), this court construed Article XVI as authorizing Longmont to lay water pipelines under the streets of Lyons despite Lyons' objections. *See also Town of Glendale v. City and County of Denver*, 137 Colo. 188, 322 P.2d 1053 (1958). Here, however, Adams County acquiesced in the laying of the water and sewer lines, and there is no question of a compulsory right-of-way. Nonetheless, the constitutional and statutory authorization of such rights-of-way and the acquiescence of Adams County in the placement of the lines preclude a finding of a transfer of title from the mere act of dedication of the public streets under which the utility lines run. *See Derby Heights, Inc. v. Gantt Water and Sewer District*, 237 S.C. 144, 116 S.E.2d 13 (1960); *Sewerage District Number One of Rapides Parish v. Afco Corporation*, 177 So.2d 308 (La. App. 1965).

Northglenn relies on *Trentman v. City and County of Denver*, 129 F.Supp. 624 (D. Colo. 1955) *aff'd*, 236 F.2d 951 (10th Cir. 1956), as the one case applying Colorado law in this area. There, the court concluded that a developer was not entitled to compensation for the value of water and sewer lines following the annexation of the area by Denver. In selling the development, explicit charges had been imposed upon many of the

purchasers for the cost of the lines, and from the time of the initial connection to the city's utility system, service had been provided by Denver. The court found that the developer had "neither protested the City's policy to directly supply water to the consumers nor made any effort to retain or regain control of either water system." *Id.* at 626. On the basis of these facts, the district court concluded that the developer had lost its interest in the facilities either because the lines had been dedicated to the public or because the beneficial interest in the lines had been sold to the purchasers.[2]

Similarly, Northglenn has cited cases in which courts have denied compensation to private developers whose utility lines have been absorbed into a municipal system. *See, e.g., Stegall v. City of Jackson,* 244 Miss. 169, 141 So.2d 236 (1962) (no compensation to developer where statute gives municipality the exclusive right to operate utility and lines were laid without authorization or express reservation of easement); *Haven Homes, Inc. v. Raritan Township,* 19 N.J. 239, 116 A.2d 25 (1955) (intention to dedicate lines found from the actions of party); *Hightower v. City of Tyler,* 134 S.W.2d 404 (Tex. Civ. App. 1939) (no compensation where developer expressly charged homeowners for utility system, did not reserve interest, and municipality at all times provided service).

■ These cases, dependent as they are on their particular facts, provide little support here. We are not dealing with parties who have abandoned continuing contact with the facilities. Rather, there has been an express determination that the appellees in this case had no intention of relinquishing their interest in the water and sewer facilities and have continued their operations and service to the public for over twenty years.

## II.

Alternatively, Northglenn claims that the ownership of the utility system has passed to the purchasers of the houses — who are citizens of Northglenn, and that the municipality therefore holds the system in a constructive trust for them. In support of this contention, Northglenn points to a small number of ambiguous advertisements circulated by the developers which it construes as indicating that the water lines were included within the purchase of homes. Northglenn further notes that the water payments made by consumers have exceeded the capital costs of the system.

■ The trial court made explicit findings on this issue and concluded:

"Neither the Northglenn residents nor the City of Northglenn have paid for any of the water and sewer facilities claimed by Northglenn, either through the purchase price of their homes or through their periodic utility bills."

---

[2]At any rate, insofar as that decision is in conflict with Colorado cases requiring intent to dedicate and acceptance by governmental authority, it, being decided by the federal courts, is not persuasive.

There is ample support for this conclusion in the record.

In this case, unlike many other situations with which courts have dealt, the developers recovered the cost of installation of sewer and water facilities by separate rebate payments from the utility operating the system. Thus, the purchasers of the homes were not directly charged for the cost of the line. Furthermore, the payment for services in excess of capital costs does not by that fact alone vest title in the consumer, nor does the increase in cost to consumers to cover those capital costs act as a sale of the capital goods themselves. While a contrary rule might produce an interesting economic system, it is not the system under which we now operate.

■ The purchasers in a development may indeed have obtained some right to prevent the interruption of service or the removal of water mains constructed for their benefit, *see Suburban Real Estate Co. v. Incorporated Village of Silverton*, 31 Ohio App. 452, 167 N.E. 474 (1929), but that right is not equivalent to title. *See Selected Investments Corp. v. City of Lawton*, 304 P.2d 967 (Okla. 1956); *Derby Heights, Inc. v. Gantt Water and Sewer District, supra.* Unlike *Trentman v. City and County of Denver, supra*, where there was a finding of dedication and an explicit representation of the sale of water mains to numerous purchasers, the trial court here found neither of these conditions to be present.

■ Finally, Northglenn contends that Thorton, as a municipality, operates the utility system in trust and that, upon incorporation, Northglenn succeeded to that trust in favor of its residents. In its argument, however, Northglenn has not adequately considered the distinction between municipal functions which are operated in a "proprietary" rather than a "governmental" capacity. As this court has noted:

"(I)t is well settled that a city in operating a water works system acts in its proprietary or business, and not in its political or governmental capacity, and in so acting is governed largely by the same rules that apply to a private corporation."

*County of Larimer v. City of Fort Collins*, 68 Colo. 364, 367, 189 P. 929, 930 (1920); *See also Englewood v. Denver, supra.* Thus, Thornton did not hold a trust to which Northglenn could succeed.

■ In numerous cases, this court has upheld the right of a municipality to serve non-resident utility customers, *see Colorado Open Space Council, Inc. v. City and County of Denver*, 190 Colo. 122, 543 P.2d 1258 (1975); *Englewood v. Denver, supra.* And the fact that a utility is operated by a municipality does not require that we find a *spontaneous* transfer of title to the system when a portion of the area served becomes incorporated. *Compare City of Aurora v. Aurora Sanitation District*, 112 Colo. 406, 149 P.2d 662 (1944) (sanitation district located within limits of city may continue to provide service although city wished to

preempt) *with Garden Home Sanitation District v. City and County of Denver*, 116 Colo. 1, 177 P.2d 546 (1947) (where sanitation district does not provide service residents may receive service from Denver after the area has been annexed by the city).

Since Northglenn cannot prevail on its substantive theories, we need not consider the trial court's findings in favor of Thornton on various subsidiary issues.

The judgment of the district court is affirmed.