KEYSTONE, A DIVISION OF RALSTON PURINA COMPANY, Plaintiff–Appellee,

v.

Robert J. FLYNN, and Public Utilities Commission of the State of Colorado, Defendants–Appellants.

No. 87SA4.

Supreme Court of Colorado, En Banc.

Feb. 13, 1989.

Rehearing Denied March 13, 1989.

Sherman & Howard, Robert E. Youle, Marla Dawn Music, Denver, for plaintiff-appellee.

Jones, Meiklejohn, Kehl & Lyons, Timothy C. Terrill, Denver, for defendant-appellant Robert J. Flynn.

John E. Archibold, Sp. Asst. Atty. Gen., Denver, for defendant-appellant Public Utilities Com'n.

ERICKSON, Justice.

This is an appeal from a judgment of the district court setting aside Public Utilities Commission (Commission) Decision No. C86–9.[1] On July 6, 1982, Robert J. Flynn filed a complaint before the Commission alleging that Keystone International, Inc., a Division of Ralston Purina Corporation (Keystone), was a public utility engaged in the public sale and distribution of water. Keystone operates the Keystone ski area and water system and owns real estate in the Snake River Valley of Summit County. Flynn's wife, Renee Flynn, purchased a condominium from Keystone in 1975 that was serviced by Keystone's water system from 1975 to 1982. The Commission ruled in favor of Flynn, and held that Keystone operated its water system as a public utility and was subject to the Commission's jurisdiction. Keystone sought a writ of prohibition from the district court. The district court ordered the Commission to dismiss Flynn's complaint. The issue before us is whether the district court had

---

1. A final judgment of the district court affirming, setting aside or modifying a decision of the Commission may be appealed directly to the supreme court. § 40–6–115(5), 17 C.R.S. (1984).

jurisdiction to review Commission Decision No. C86–9. We hold that the district court did not have jurisdiction because the Commission's decision was not final, and was not subject to review by the district court. Accordingly, we reverse and remand with directions.

## I.

Keystone owned, developed, and sold real property in a ski resort complex in the Snake River Valley area. Part of Keystone's property was developed as a residential and resort community. In order to facilitate development of the property, Keystone acquired water rights and constructed a water system to service the residential community. The water system provided water to the Keystone Village area, designated as "Base III." [2] In the 1970's, Base III was the largest development in the Keystone area and included 750 condominiums, 85 single-family dwellings, and an 150–room hotel. Keystone eliminated the water supply options for Renee Flynn and other purchasers of condominiums in Base III by selling the condominiums subject to restrictive covenants in the deeds. The covenants prohibited the construction of private wells and required that all of the property owners obtain their water from Keystone, or some other "quasi-municipal" water supplier. Until 1982, Keystone was the only "quasi-municipal" water supplier in the area. Keystone represented in its sales brochures, its articles of incorporation, and its bylaws that it would provide water service to property owners within the Base III area. Users of water in the service area were assessed monthly charges by Keystone for their water.

Six sites within Base III were not developed or owned by Keystone and five homes were built on those sites. The homes used existing private wells until Keystone supplied three of the residences with water. Owners of two of the five homes granted Keystone easements in exchange for water. The owner of the third residence applied for water service, but was denied the service until his home was purchased by a member of the board of Ralston Purina Company, at which time the request for water service was granted. The record reflects that as a general policy, however, other properties within the Base III area that were not owned or developed by Keystone were denied access to Keystone's water system.

Keystone also sold water to developments in the Snake River Valley outside of Base III. Water was sold to the Anchor Mountain Oyster Development Group after the group released Keystone from liability for trespass. Independent property owners who were in close proximity to the transmission line that served Keystone's ski facilities were also sold water.

In 1982, a petition was filed in Summit County district court to organize the Snake River Water District (Snake River). The purpose of the formation of Snake River was to combine Keystone's water system and the various independent wells and local systems in operation in the Snake River Valley into one uniform water collection and transmission network. The service plan for Snake River stated that the proposed water district intended to purchase Keystone's existing water system and water rights for approximately $3,000,000.

At a public hearing in June 1982, before the Board of County Commissioners for Summit County, Flynn appeared and contested the sale of the Keystone system to Snake River. Despite Flynn's objections, the Board approved the plan and scheduled a second public hearing for July 13, 1982.

On July 9, 1982, Flynn filed a complaint before the Commission asserting that Keystone was a public utility and was subject to the Commission's jurisdiction. Flynn's principal allegation is that the sale plan failed to reimburse Renee Flynn and other purchasers of Keystone's water for the capital contributions they paid to improve the water system. The complaint also alleges that Keystone charged Renee Flynn and other customers monthly fees to maintain and improve the water facilities, without regulation by the Commission, and asserts that the customers are entitled to a return of their capital contributions. Flynn also asserts that Keystone failed to comply with the Commission's regulations and

---

**2.** Of approximately 1,360 equivalency taps in the water system, 1,220 were located in Base III.

rate-setting procedures, and failed to submit the sale of the assets of the water system to the Commission for approval. *See* §§ 40–3–101 to –112, 17 C.R.S. (1984 & 1988 Supp.). In his prayers for relief, Flynn also sought to postpone the formation of Snake River until the issues in the complaint were addressed. Flynn asked that the Commission petition the district court to stay the final public hearing on Snake River scheduled for July 13, 1982.

The Commission declined to intervene in the district court and on August 10, 1982, the formation of Snake River was approved by a vote of the district's residents and property owners. The district court certified the election results and decreed the formation of Snake River. Shortly after the court's decree, Snake River purchased Keystone's water system and rights, and the formation of the water district was completed.

Keystone responded to Flynn's complaint in August 1982, by filing a "Motion to Dismiss Complaint and to Strike." Keystone claimed that the Commission lacked subject matter jurisdiction over it and that Flynn's complaint failed to state a claim on which relief may be granted. After a hearing on Keystone's motion, a Commission examiner issued his recommended decision on August 11, 1983, which concluded that the Commission did not have jurisdiction over the subject matter of the complaint because the sale and transfer of assets to a special district is governed by sections 32–1–101 to –1307, 13 C.R.S. (1973 & 1988 Supp.). The examiner found that the Commission could not regulate Snake River because it is a quasi-municipal organization and accordingly recommended dismissal of Flynn's complaint.

Flynn filed exceptions to the examiner's recommendation asserting that the examiner misinterpreted the relief Flynn was requesting in his complaint. Flynn asserted that he was not seeking to have the Commission regulate Snake River but that he sought a determination that Keystone operated its water system as a public utility. If the Commission concluded that Keystone was a public utility prior to the sale of the water system and rights, Flynn contended that the Commission should regulate the disposition of the water system assets and the terms and conditions of the sale.[3] The Commission granted Flynn's exceptions and ordered the examiner to conduct a new hearing to determine whether Keystone operated as a public utility prior to the sale.

On August 23, 1985, in a second recommended decision, the examiner found that Keystone was not a public utility. Relying on section 40–1–103(1)(a), 17 C.R.S. (1984),[4] and *City of Englewood v. City and County of Denver*, 123 Colo. 290, 229 P.2d 667 (1951), the examiner found that Keystone: (1) intended and did operate its water system only for the benefit of its own properties; (2) did not market, promote, or hold itself out to indiscriminately serve all members of the public within its service area; (3) consistently refused to provide water to members of the general public; and (4) occasionally provided water service to members of the general public, but demanded and received some benefit in return, such as an easement. The examiner concluded that the Commission did not have jurisdiction to review the sale of the water system and again recommended that Flynn's complaint be dismissed.

On January 2, 1986, the Commission entered Decision No. C86–9, which is the sub-

3. Section 40–5–105, 17 C.R.S. (1984) provides: Certificate or assets may be sold, assigned or leased. The assets of any public utility, including any certificate of public convenience and necessity or rights obtained under any such certificate held, owned, or obtained by any public utility, may be sold, assigned, or leased as any other property other than in the normal course of business *but only upon authorization by the commission and upon such terms and conditions as the commission may prescribe.*
(Emphasis added.)

4. Section 40–1–103(1)(a), 17 C.R.S. (1984) states: The term "public utility", when used in articles 1 to 7 of this title, includes every ... water corporation, ... operating for the purpose of supplying the public for domestic, mechanical, or public uses and every corporation, or person declared by law to be affected with a public interest, and each of the preceding is hereby declared to be a public utility and to be subject to the jurisdiction, control, and regulation of the commission and to the provisions of articles 1 to 7 of this title.

ject of this appeal, and granted Flynn's exceptions to the examiner's second recommended decision and made its own findings of fact and conclusions of law.[5] The Commission concluded that Keystone, by providing water to Base III and other areas, was a public utility that provided water service indiscriminately to the extent of its capacity within the service area and was impressed with the public interest. The Commission stated "isolated denials of service to a few do not preclude our conclusion that Keystone operated as a public utility ... through a holding out in a defined area while at the same time serving by contract in another." *See Parrish v. Public Util. Comm'n,* 134 Colo. 192, 301 P.2d 343 (1956); *see also Western Colorado Denver Co. v. Public Util. Comm'n,* 159 Colo. 262, 411 P.2d 785 (1966). The holding was based on Keystone's representations made to the public as documented in the sales brochures and corporate documents as well as the testimony of Keystone's witnesses. Since Keystone had provided water service indiscriminately to the public within its service area, the Commission held that Keystone operated its water system as a public utility. The Commission returned the case to the hearing examiner for the purpose of submitting a recommended decision on the merits of Flynn's complaint and to conduct a hearing on Flynn's request for attorney fees.

On April 10, 1986, before the hearing examiner issued his final recommended decision, Keystone filed a complaint in the Denver district court. The complaint sought a writ of prohibition enjoining the Commission from exercising subject matter jurisdiction over Keystone. Flynn filed a motion to dismiss the complaint on the grounds that Keystone had failed to exhaust its administrative remedies and that the Commission's decision was not a final order disposing of all the issues between Flynn and Keystone.

Keystone responded that a final order was not necessary because the complaint sought prohibition. *See Peoples Natural Gas v. Public Util. Comm'n,* 626 P.2d 159 (Colo.1981). Section 40–6–115(4), 17 C.R.S. (1984), permits writs of mandamus and declares that the Colorado Rules of Civil Procedure are applicable, but does not allow any other interlocutory review, such as prohibition. We recognized, by way of dictum in *City of Thornton v. Public Util. Comm'n,* 154 Colo. 431, 391 P.2d 374 (1964), that relief in the nature of prohibition might be a proper remedy to prevent the Commission from assuming jurisdiction over parties or subject matter beyond that conferred by law. However, the dictum in *City of Thornton* became meaningless when the General Assembly amended section 40–6–115(4), *see* ch. 267, sec. 47, § 115–6–15(4), 1969 Colo.Sess.Laws 927, 949–51, and precluded all interlocutory review except by mandamus. Here, mandamus was not available and was not the remedy sought by Keystone. Mandamus is only available if a state agency has failed to perform a statutory duty, or to adhere to its statutory responsibility. *Peoples Natural Gas,* 626 P.2d 159, 162 (Colo.1981). Mandamus will not lie to compel the Commission to exercise its discretion in a particular way. *State v. Peck,* 92 Colo. 224, 19 P.2d 217 (1933). The remedy of mandamus is also foreclosed when another adequate remedy is obtainable. Keystone has not demonstrated that appellate review was not an adequate remedy.[6] Keystone did not seek to compel performance of any duty imposed upon the Commission by statute. Since appellate review is an adequate remedy, mandamus was not available.

## II.

The district court reviewed the Commission's decision and concluded that based on the evidence of record, Keystone was not a public utility and that the Commission act-

---

5. The Commission may, upon its own motion or where exceptions have been filed, reconsider an examiner's recommended decision. The Commission may, after examination of the record of the proceeding, reject the examiner's findings and enter its own findings of fact and conclusions of law. § 40–6–109(2), 17 C.R.S. (1984).

6. Keystone suggests that appellate review might be inadequate since it would then be forced to "submit to an unlawful exercise of jurisdiction" by the Commission. However, every tribunal has jurisdiction to determine the facts on which its own jurisdiction depends and to make a jurisdictional ruling based on the facts. *See United States v. United Mine Workers,* 330 U.S.

ed arbitrarily and capriciously in holding that Keystone operated its water system as a public utility. Accordingly, the district court issued a rule directing the Commission to dismiss Flynn's complaint for lack of subject matter jurisdiction. Section 40-6-115(1), 17 C.R.S. (1984), provides in part: "Within thirty days after the application for a rehearing, reargument, or reconsideration is denied by the commission, the applicant may apply to the district court for a writ of certiorari or review for the purpose of having lawfulness of the *final* decision inquired into and determined." (Emphasis added.) Section 40-6-115 establishes the exclusive procedure for judicial review by the district court of a final Commission decision. *See Silver Eagle Servs., Inc. v. Public Util. Comm'n,* 768 P.2d 208 (Colo. 1989); *Colorado Mun. League v. Public Util. Comm'n,* 687 P.2d 416 (Colo.1984); *Atchison, Topeka & Santa Fe Ry. Co. v. Public Util. Comm'n,* 194 Colo. 263, 572 P.2d 138 (1977); *Mountain States Tel. & Tel. Co. v. Public Util. Comm'n,* 182 Colo. 269, 513 P.2d 721 (1973) (decided under § 115-6-15, 11 C.R.S. (1969), a predecessor of § 40-6-115); *Consolidated Freightways Corps. of Delaware v. Public Util. Comm'n,* 158 Colo. 239, 406 P.2d 83 (1965) (decided under § 115-6-15, 5 C.R.S. (1963)); *People v. District Court,* 134 Colo. 324, 303 P.2d 692 (1956) (decided under § 115-6-15, 5 C.R.S. (1953)).

■ Jurisdiction of the courts to review an administrative decision of the Commission does not exist until all issues between the parties have been resolved and the proceeding before the Commission is final. *See Public Util. Comm'n v. Poudre Valley Rural Elec. Assoc.,* 173 Colo. 364, 480 P.2d 106, 108 (1970); *see also Public Util. Comm'n v. District Court,* 186 Colo. 278, 527 P.2d 233, 235 (1974) (no basis for district court review of Commission decisions unless administrative remedy is exhausted); *Mountain States,* 182 Colo. at 283, 513 P.2d at 728 (district court review of Commission decisions permissible only after a full hearing and presentation of evidence before the Commission).[7]

■ Here, the decision of the Commission that it had subject matter jurisdiction over Keystone is not a final decision which may be reviewed by Keystone to the district court. Flynn raises issues in his complaint that must be decided by the Commission once it has determined that Keystone operated as a public utility and is subject to the jurisdiction of the Commission.

The Commission did not intend Decision No. C86-9 to be final. The Commission remanded the case back to the hearing examiner "for the purpose of submitting a recommended decision with respect to the merits of the complaint." Additionally, Keystone has not filed an answer to

---

258, 292 n. 57, 67 S.Ct. 677, 695 n. 57, 91 L.Ed. 884 (1947) (quoting *Carter v. United States,* 135 F.2d 858, 861 (5th Cir.1943)) ("except in case of plain usurpation, a court has jurisdiction to determine its own jurisdiction"); *United Mine Workers,* 330 U.S. at 310, 67 S.Ct. at 704 ("Short of an indisputable want of authority on the part of a court, the very existence of a court presupposes its power to entertain a controversy, if only to decide, after deliberation, that it has no power over the particular controversy.").

Here, the Commission did not unlawfully exercise its authority pursuant to Article XXV of the Colorado Constitution and sections 40-1-103(1)(a), 40-6-101, and 40-6-108 to conduct hearings and investigations in response to Flynn's complaint requesting that Keystone be declared a public utility. Because the Commission has jurisdiction to determine whether an entity is operating as a public utility, any error in making this determination did not deprive the Commission of jurisdiction. *See People in Interest of Clinton,* 762 P.2d 1381, 1387-88 (Colo.1988) (erroneous decision does not de-

prive tribunal of jurisdiction); *Stiger v. District Court,* 188 Colo. 407, 409, 535 P.2d 508, 509 (1975) (tribunal "ha[s] jurisdiction to render a wrong as well as a right decision"). Judicial review of the Commission's final jurisdictional determination would be subject to the same standard of review as other Commission findings and conclusions. § 40-6-115(2), (3); *see, e.g., Colorado Municipal League v. Mountain States Tel. & Tel. Co.,* 759 P.2d 40, 44 (Colo. 1988).

7. In general, courts will not interfere with administrative proceedings until the agency has taken final action. *T & S Leasing v. District Court,* 728 P.2d 729 (Colo.1986); *Colorado Health Facilities Review Council v. District Court,* 689 P.2d 617 (Colo.1984); *Department of Revenue v. District Court,* 172 Colo. 144, 470 P.2d 864 (1970). Review of interlocutory administrative decisions is inefficient and leads to judicial encroachment on the executive functions. *T & S Leasing,* 728 P.2d at 731.

Flynn's complaint, nor has discovery been completed. In short, the Commission has not resolved all of the issues between the parties.

We conclude that Commission Decision No. C86–9 was not a final decision subject to judicial review pursuant to section 40–6–115, and accordingly this case was not properly before the district court. The district court prematurely accepted jurisdiction to review the Commission's decision, and erroneously issued a writ of prohibition.

We remand to the district court with instructions to vacate the writ of prohibition and to return the case to the Commission for a determination on the merits. The requests for attorney fees incurred on this appeal by Flynn and Keystone are denied.