594 P.2d 1062 (1979)
CASTLEWOOD CORPORATION, Plaintiff-Appellant,
v.
CITY AND COUNTY OF DENVER, Acting By and Through ITS BOARD OF WATER COMMISSIONERS, Defendant-Appellee.
No. 78-625.
Colorado Court of Appeals, Division. 3.
December 7, 1978.
Rehearing Denied January 4, 1979.
Certiorari Denied May 14, 1979.
Calkins, Kramer, Grimshaw & Harring, James S. Bailey, Jr., Denver, for plaintiff-appellant.
Wayne D. Williams, Oscar Goldberg, Denver, for defendant-appellee.
*1063 PIERCE, Judge.
Plaintiff, Castlewood Corporation, brought this C.R.C.P. 106(a)(4) action against the Board of Water Commissioners of the City and County of Denver, seeking a return of certain fees paid to the Board. The district court entered judgment in favor of the Board, and Castlewood appeals. We affirm.
In 1973, an area known as "Friendly Hills" was annexed by the City and County of Denver. Castlewood began development plans for Friendly Hills in 1974, and contacted the Denver Water Board in an effort to make arrangements for a water system. The Board offered Castlewood two alternatives: it could obtain services directly through existing Denver facilities or through the facilities of the Lakehurst Water and Sanitation District, a water district serving an area in Jefferson County containing a portion of Friendly Hills. Lakehurst's water service is provided by the Denver Water Board under a Distributor's Contract. Because of the distance to the Denver facilities, and because of the corresponding cost and delay, Castlewood chose to connect its lines to the Lakehurst system.
The Board permitted Lakehurst to furnish the water to Friendly Hills, but required that Castlewood pay system development charges ("tap fees") at the higher rate charged to non-residents of Denver. The Board took this step because it feared that pending litigation would cause Friendly Hills to be de-annexed, and that once the lines were installed it would, as a practical matter, be impossible to collect the higher tap fees. Castlewood challenged the Board's right to require higher fees, but all administrative efforts to change the Board's decision failed. Accordingly, in September of 1975, the Board and Castlewood entered into a contract under which Castlewood agreed to pay the higher tap fees to the Board, with the difference between the in-city and out-city fees to be put into escrow and to be refunded to Castlewood if the pending annexation challenge failed.
In February of 1976, the de-annexation action was successful, and the Board retained the escrowed funds pursuant to the escrow agreement. Castlewood demanded a refund, exhausted its administrative remedies, and brought this action under C.R. C.P. 106(a)(4). The district court entered judgment for the Board.
The principal issue on appeal is whether it was improper for the Board to require Castlewood to pay tap fees at the out-city rate, escrowing the difference subject to refund. Castlewood argues that once the area became annexed to Denver, the Board had the obligation to charge residents of the area no more than any other in-city residents. We disagree.
It is true that once the area was annexed, it became part of the City of Denver for all governmental purposes. Garden Homes Sanitation District v. City and County of Denver, 116 Colo. 1, 177 P.2d 546 (1947). See Westminster v. District Court, 167 Colo. 263, 447 P.2d 537 (1968). But a municipality acts in its proprietary capacity when it operates a water works system, and is governed primarily by the same rules which apply to private corporations. City of Northglenn v. City of Thornton, Colo., 569 P.2d 319 (1977). Therefore, contrary to Castlewood's argument, the annexation statutes interpreted in Garden Homes, supra, do not require that all resident water users be treated uniformly.
In fact, the applicable City Charter provision requires rate uniformity only "as far as practicable." Denver City Charter, § C4.23. The validity of the Friendly Hills annexation was already subject to litigation when the escrow agreement was executed, and we agree with the district court that, under these circumstances, the escrow arrangement was a reasonable mechanism by which the Board could insure the payment of the proper tap fees in the event the annexation was successfully challenged. Furthermore, since there was evidence that the Board treated all property owners in contested annexation areas similarly, the escrow agreement did not operate to discriminate unreasonably among in-city users.
*1064 See Western Heights Land Corp. v. City of Fort Collins, 146 Colo. 464, 362 P.2d 155 (1961).
Castlewood also argues that the escrow arrangement was improper because nothing in the distribution agreement between Lakehurst and the City of Denver permits Lakehurst to charge tap fees. However, the source of the City's right to the escrowed funds was the September 1975 escrow agreement between it and Castlewood, and not the distribution agreement with Lakehurst.
We have reviewed the balance of Castlewood's arguments and find them to be without merit. Judgment affirmed.
RULAND and VanCISE, JJ., concur.